SQUIRE SANDERS (US) LLP
Mark C. Goodman (State Bar No. 154692)
Xavier M. Brandwajn (State Bar No. 246218)
275 Battery Street, Suite 2600
San Francisco, CA  94111
Telephone:   +1.415.954.0200
Facsimile:    +1.415.393.9887
Email:         Mark.Goodman@squiresanders.com
               Xavier.Brandwajn@squiresanders.com

Attorneys for Plaintiff
LOGTALE, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LOGTALE, LTD., a British Virgin Islands corporation,<br><br>              Plaintiff,<br><br>      vs.<br><br>IKOR, Inc., a South Dakota corporation, Dr. James CANTON, an individual, and Dr. Ross W. TYE, an individual,<br><br>              Defendants. | Case No. 3:11-CV-05452-MEJ<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**(1) INJUNCTIVE RELIEF;**<br><br>**(2) BREACH OF CONTRACT;**<br><br>**(3) BREACH OF FIDUCIARY DUTIES; AND**<br><br>**(4) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br><br>**DEMAND FOR JURY TRIAL** |

SQUIRE SANDERS
(US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ

Plaintiff LOGTALE, LTD. ("Plaintiff") alleges as follows:

**NATURE OF THE ACTION**

1.  This is an action by the majority preferred shareholder of a private company to remedy completed and proposed unauthorized transactions and actions by that company, IKOR, Inc. ("IKOR"), and certain of its directors and officers, which transactions and actions violate corporate duties, contractual obligations and applicable state law.  Specifically, Plaintiff seeks an injunction of IKOR's proposed *ultra vires* acts -- its proposed reverse merger into a Tennessee shell corporation, a transaction negotiated without Plaintiff's knowledge, much less its consent, and a related change in IKOR's Board of Directors ("IKOR Board") -- and seeks equitable and monetary relief for the defendants' breaches of fiduciary duties and breach of contract.

**THE PARTIES AND THEIR RELATIONSHIPS**

2.  Plaintiff is a British Virgin Islands company with its principal place of business at 17th Floor, Chevalier Commercial Centre, 8 Wang Hoi Road, Kowloon Bay, Hong Kong. Plaintiff is an investment holding company.  Plaintiff owns 1,999,840 shares of defendant IKOR's 2,000,000 outstanding Series A Convertible Preferred Stock.

3.  Plaintiff holds a 50% interest in New A Innovation Limited (formerly New a-IKOR Limited, and referred to herein as "NEWAI"), a company incorporated in Hong Kong that researches and develops biopharmaceutical products before they are patented or registered for marketing or sale.

4.  Defendant IKOR is a South Dakota corporation, with its principal office located at 716 North Production Street, Aberdeen, South Dakota 57401, as reflected in official records with the Secretary of State of South Dakota, and its business offices located at 2084 Union Street, San Francisco, CA 94123.  IKOR is in the business of developing bovine-derived oxygen therapeutics and related technologies.

5.  Defendant Dr. James Canton is the Chief Executive Officer and Secretary of IKOR. He is also the Chairman of the IKOR Board.  On information and belief, Dr. Canton is a resident of California.

6.  Defendant Dr. Ross W. Tye is a founder and director of IKOR.  On information and

1  belief, Dr. Tye is a resident of California and has a medical practice located at 1361 Cortina

2  Drive, Suite A, Orland, CA 95963.

3      7.  Collectively, IKOR, Dr. Tye and Dr. Canton are referred to herein as the

4  "defendants."

5  **JURISDICTION AND VENUE**

6      8.  The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.

7  §1332 because there is complete diversity of citizenship between Plaintiff and each of the

8  defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9      9.  Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(3) because each of the

10  defendants is subject to personal jurisdiction in this district and there is no district in which this

11  action may otherwise be properly brought.

12      10.  Although IKOR's principal office is located in South Dakota, its business office is

13  located at 2084 Union Street, San Francisco, CA 94123.  Indeed, that location was IKOR's

14  original principal place of business when IKOR was incorporated.  IKOR is located and transacts

15  business in this district, thereby conferring personal jurisdiction over IKOR.

16      11.  This Court has personal jurisdiction over Dr. Canton because, based on information

17  and belief, he resides and transacts business in California.

18      12.  This Court has personal jurisdiction over Dr. Tye because, based on information and

19  belief, he resides and transacts business in California.

20      13.  Venue is also proper in this district pursuant to 28 U.S.C. §1391(a)(2) because a

21  substantial portion of the acts or omissions that are the subject of this action occurred in this

22  district.  Specifically, the Series A Preferred Stock Purchase Agreement, pursuant to which

23  Plaintiff purchased shares of IKOR preferred stock, provides that "[a]ny proceedings to resolve a

24  dispute arising under this Agreement shall take place in California."  Because IKOR's business

25  office is located in California and in this district, venue is proper in this district.  In addition,

26  Plaintiff is informed and believes, and on that basis alleges, that a substantial number of IKOR

27  Board meetings and of Dr. Canton's material representations and omissions, which are described

28  herein and are the basis for certain of Plaintiff's claims for relief, were made in this district,

SQUIRE SANDERS
(US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ     2

1   thereby rendering venue in this district proper.

2   **FACTUAL BACKGROUND**

3   <u>**PLAINTIFF'S INVESTMENT IN IKOR**</u>

4   14.   IKOR was incorporated in South Dakota on or about August 28, 2006.  Pursuant to

5   its original articles of incorporation, IKOR was authorized to issue 2,000,000 shares of Preferred

6   Stock and 10,000,000 shares of Common Stock.

7   15.   IKOR is the assignee and owner of three U.S. patents:  (a) U.S. Patent 6,894,150,

8   issued on May 17, 2005 and entitled "Non-Pyrogenic, Endotoxin-Free, Stroma-Free Tetrameric

9   Hemoglobin"; (b) U.S. Patent 7,494,974, issued on February 24, 2009 and entitled

10   "Carboxymethylated Cross-Linked Tetrameric Hemoglobin"; and (c) U.S. Patent 7,504,377,

11   issued on March 17, 2009 and entitled "Nitric Oxide-Blocked Cross-Linked Tetrameric

12   Hemoglobin."  Collectively, these three patents are referred to herein as the "IKOR Patents."

13   Plaintiff was interested in and valued the IKOR Patents, which was one of the primary reasons for

14   Plaintiff's investment in IKOR.

15   16.   IKOR is also the owner of certain know-how, including proprietary information,

16   trade secrets, techniques, materials and data relating to IKOR's business operations and to the

17   technologies claimed and described in the IKOR Patents.  Collectively, IKOR's know-how and

18   the IKOR Patents are referred to herein as "IKOR Technology."  Plaintiff was interested in and

19   valued this intellectual property, which was one of the primary reasons for Plaintiff's investment

20   in IKOR.

21   17.   On or about October 20, 2006, following, and in reliance on, several weeks of due

22   diligence by Plaintiff and its agents into IKOR's business and financial condition, Plaintiff and

23   IKOR entered into a Series A Preferred Stock Purchase Agreement ("Purchase Agreement"), a

24   true and correct copy of which is attached hereto as Exhibit 1.  Pursuant to the Purchase

25   Agreement, IKOR was authorized to sell and issue, and did so sell and issue to Plaintiff,

26   1,999,840 shares of its Series A Convertible Stock at a purchase price of $2.5002 per share.  As a

27   result of this purchase, Plaintiff became the majority shareholder of Preferred Stock in IKOR.

28   18.   On or about October 20, 2006, IKOR issued Amended and Restated Articles of

SQUIRE SANDERS
(US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ                    3

1    Incorporation, a true and correct copy of which is attached hereto as Exhibit 2.  In pertinent part,

2    Article IV(B), Section 6 of the Amended and Restated Articles of Incorporation provides that,

3    "[s]o long as at least 100,000 shares of Preferred Stock are outstanding …, the Corporation shall

4    not (by amendment, merger, consolidation or otherwise) without first obtaining the approval (by

5    vote or written consent, as provided by law) of the holders of at least a majority of the then

6    outstanding shares of Series A Convertible Preferred Stock:  (g) take any action which results in

7    any merger, corporate reorganization, sale or transfer of control, voluntary dissolution or

8    liquidation, sale or exclusive license of all or substantially all of the Corporation's intellectual

9    property, or any transaction in which all or substantially all of the assets of the Corporation are

10   sold; …(k) change the authorized number of directors of the Corporation; [or] (l) take any action

11   which results in a change to the corporate form of the Corporation" ….  (Exhibit 2 at 13-14.)

12        19.   Pursuant to Article IV(B), Section 5(b) of the Amended and Restated Articles of

13   Incorporation, Plaintiff, as the majority shareholder of Preferred Stock in IKOR, had the right to

14   elect, and did elect, Dr. Norman Wai to serve as a director on the IKOR Board.

15        20.   Also on or about October 20, 2006, Plaintiff and the defendants entered into an

16   Investors' Rights Agreement, a true and correct copy of which is attached hereto as Exhibit 3.

17   The stated purpose of the Investors' Rights Agreement was, *inter alia*, to induce Plaintiff to

18   purchase Series A Preferred Stock and invest funds in IKOR pursuant to the Purchase Agreement,

19   as well as to govern Plaintiff's rights as an investor in IKOR.

20        **DEFENDANTS BREACH THEIR CORPORATE AND CONTRACTUAL OBLIGATIONS**

21        **Defendants Fail To Satisfy Their Obligations Under The Investors' Rights Agreement**

22        21.   Since the IKOR Board meeting held on July 30, 2009, Plaintiff made repeated

23   written requests that IKOR provide it with audited annual financial statements for the fiscal years

24   2006, 2007 and 2008.  To this day, the aforesaid audited statements, together with those of 2009

25   and 2010, have not been provided to Plaintiff despite repeated requests and demands.  These

26   requests were made pursuant to Plaintiff's rights under section 2.1 of the Investors' Rights

27   Agreement.

28        22.   With respect to the audited financial statements of 2006, 2007 and 2008, the

SQUIRE SANDERS
(US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ                                4

1   defendants consistently either ignored these requests or responded that an audit was being

2   prepared and that the requested documents were forthcoming, but they never were.

3       23.   With respect to the audited financial statements of 2009 and 2010, IKOR refused to

4   provide the same and, instead, made the unreasonable request that Plaintiff provide its audited

5   statements to IKOR.

6       24.   Plaintiff has yet to obtain any requested audited financial statements from IKOR,

7   despite requests by Plaintiff and promises by the defendants made during the parties' effort to

8   resolve this dispute informally.

9                          **The Unexplained BeefTech Transactions**

10      25.   In or about November 2009, Plaintiff learned that Dr. Canton, Dr. Tye and Norg

11  Sanderson (another director of IKOR) were shareholders and, on information and belief, the Chief

12  Executive Officer, scientist and managing director, respectively, of BeefTech LLC ("BeefTech").

13  On information and belief, BeefTech is a producer of bovine plasma, serum and red blood cells,

14  which business Plaintiff believes, and on that basis alleges, is in conflict with IKOR's business

15  and intellectual property rights (including the IKOR Patents and IKOR Technology).  Plaintiff is

16  further informed and believes, and on that basis alleges that, despite their competing business

17  interests, BeefTech and IKOR were and are run out of the same offices at 2084 Union Street, San

18  Francisco, CA 94123.

19      26.   Accordingly, on November 24, 2009, Plaintiff asked Dr. Canton to provide

20  information and advise what specific steps the defendants had taken to ensure that their positions

21  at BeefTech would not result in a breach of fiduciary duties owed to IKOR and to Plaintiff.

22      27.   On November 25, 2009, and in subsequent communications, Dr. Canton responded to

23  Plaintiff by asserting, in conclusory fashion only, that neither BeefTech nor its directors were in

24  conflict with IKOR.

25      28.   On December 8, 2009, Dr. Canton represented to Plaintiff that BeefTech was formed

26  for the special purpose of providing limited services to IKOR, including debt financing and

27  alleged expertise regarding logistics and cattle management.  Dr. Canton admitted that Mr.

28  Sanderson, Dr. Tye and he were the owners of BeefTech.  Dr. Canton provided Plaintiff no other

SQUIRE SANDERS
(US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ                    5

1    information relating to BeefTech.

2         29.   Plaintiff is informed and believes, and on that basis alleges, that neither the formation

3    of BeefTech nor its ownership and control by IKOR directors were disclosed to Plaintiff or to the

4    entire IKOR Board.  Plaintiff did not learn about BeefTech until it specifically inquired about that

5    entity in late 2009.  Plaintiff further alleges that IKOR and BeefTech have conflicting interests

6    and that Dr. Canton's, Dr. Tye's and Mr. Sanderson's involvement with both entities is harmful to

7    IKOR and to Plaintiff's investment in IKOR.

8         30.   Plaintiff is informed and believes, and on that basis alleges, that IKOR did not seek

9    or secure Plaintiff's or the IKOR Board's approval to have three of its directors own and control

10   another company conducting business in conflict with IKOR.

11        31.   In view of these and other disturbing acts by the defendants, on January 5, 2010,

12   Plaintiff sought to protect its investment in IKOR by requesting that IKOR redeem 1,899,840

13   shares (*i.e.,* all but 100,000) of Plaintiff's shares of IKOR's Series A Convertible Preferred Stock.

14   This request was made to IKOR pursuant to the Article IV(B), Section 3(a) of IKOR's Amended

15   and Restated Articles of Incorporation.

16        32.   Dr. Canton responded to this request on behalf of IKOR by letter dated January 19,

17   2010.  In that letter, Dr. Canton informed Plaintiff that IKOR had been advised by its South

18   Dakota counsel that, under applicable capital impairment laws, IKOR did not have funds legally

19   available for redemption of any of Plaintiff's shares of Series A Preferred Stock.  Dr. Canton

20   advised that no shares of IKOR could then be redeemed in response to Plaintiff's notice.

21   Pursuant to Article IV(B), Section 3(c) of the Amended and Restated Articles of Incorporation,

22   Plaintiff's unredeemed preferred shares remained outstanding and entitled Plaintiff to all the

23   rights and preferences provided by ownership of such shares.

24        33.   In January 2010, Plaintiff again requested documents from IKOR to evaluate the

25   reasonableness and fairness of IKOR's operations and transactions, including its relationship with

26   BeefTech.  Specifically, Plaintiff requested that IKOR immediately provide copies of:  IKOR's

27   financial statements; minutes of all meetings of the IKOR Board; copies of all contracts IKOR

28   had entered with BeefTech and any and all of its officers and directors; any and all

**SQUIRE SANDERS**
**(US) LLP**
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ                               6

1   communications with BeefTech; and IKOR's statements for its bank accounts.  IKOR did not

2   provide, and to date has still not provided, these documents.

3          34.   In the following months (in or around March 2010), Plaintiff, as a concerned

4   shareholder, followed up by requesting that IKOR provide BeefTech's certificate of

5   incorporation, articles of incorporation, issued capital, current and past shareholder information,

6   current directors and the financial statements and any agreements or contracts between IKOR and

7   BeefTech, to allow Plaintiff to evaluate Dr. Canton's representations about the IKOR-BeefTech

8   relationship.

9          35.   Making no progress with IKOR or its directors, in or around April 2010, Plaintiff

10  turned to Ernst & Young and outside legal counsel to investigate these transactions and IKOR's

11  business and financial condition.  In response to such investigations and Plaintiff's requests for

12  information, IKOR finally provided certain documents, but did not provide all of the information

13  requested, including, but not limited to, the audited financial statements of IKOR.

14         36.   As a result of these investigations, Plaintiff learned on or about April 16, 2010 that,

15  between 2008 and 2009, IKOR had been engaging in a number of transactions with BeefTech,

16  including, but not limited to, using IKOR funds to pay for BeefTech expenses and for

17  "reimbursements" to IKOR/BeefTech directors and shareholders, including, but not limited to,

18  Dr. Canton.  Because few entries in IKOR's journal and general ledger had any supporting

19  documentation or a verifiable explanation provided by IKOR's directors and officers, neither

20  Plaintiff nor its agents have been able to definitively determine the amount of IKOR funds used to

21  pay for BeefTech expenses or for reimbursements to IKOR/BeefTech directors and shareholders.

22  However, Plaintiff is informed and believes, and on that basis alleges, that the IKOR-BeefTech

23  transactions involved several hundreds of thousands of dollars.  To give but one example, IKOR's

24  Notes Payable reported "Service Contract Revenue" of $72,216.48 for products and services

25  allegedly provided by IKOR to BeefTech, but neither Plaintiff nor its agents is aware of or can

26  locate any IKOR-BeefTech service contract or invoice to support this entry.  Of course, the

27  results of this investigation were all the more disturbing to Plaintiff, who had been advised only

28  three months before that IKOR did not have legally sufficient funds to redeem a single Plaintiff

SQUIRE SANDERS
(US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ                    7

1    share of IKOR preferred stock.

2          37.   Plaintiff repeatedly requested that the defendants explain, with supporting

3    documentation, these related-party transactions so that Plaintiff could evaluate whether they were

4    fair and in the best interests of IKOR and its shareholders, especially since IKOR had not

5    disclosed them to Plaintiff previously.  Again, the defendants consistently refused to provide the

6    requested documentation, proffering instead their "word" that these transactions were fair and in

7    IKOR's best interests.

8          **Defendants Hide Material Facts About IKOR's Products And Business From Plaintiff**

9          38.   In or around May 2006, Dr. Bing Wong, Plaintiff's current Chief Technology

10   Officer, was contacted by his long term colleague and business partner, Mr. Carl Rausch.  Dr.

11   Rausch was at the time working as a consultant for IKOR, and suggested that Dr. Wong consider

12   IKOR Life Sciences, Inc. (IKOR's immediate corporate predecessor, whose corporate office was

13   located at 2084 Union Street, San Francisco, CA 94123, and referred to herein as "IKOR") as a

14   possible investment opportunity, given the development status of *IKOR-2084*, one of IKOR's

15   blood treatment products.

16         39.   Following up on Dr. Rausch's introduction, Dr. Tye sent Dr. Wai a copy of IKOR's

17   May 2006 Business Plan (the "IKOR Business Plan").  By its own terms, the 51-page IKOR

18   Business Plan "was prepared by IKOR … and is being delivered to a limited number of

19   accredited investors who may be interested in pursuing an investment in [IKOR]" and its "sole

20   purpose … is to assist the recipient in deciding whether to proceed with a further investigation of

21   [IKOR]."

22         40.   The IKOR Business Plan stated that IKOR had achieved a number of "milestones"

23   since its initial capitalization in 2004, including but not limited to:

24               a.    "Developed a fully working research and development facility with a

25                     trained staff";

26               b.    "Founded a pilot manufacturing facility that is currently producing the

27                     *IKOR Therapeutics* for pre-clinical trials";

28               c.    "Conducted preliminary animal trials in both rabbits and pigs

SQUIRE SANDERS
(US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ                    8

1    demonstrating safety, stability and tolerance, key success factors for regulatory

2    submissions";

3          d.      "Conducted independent trials to confirm safety with animal models,

4          further confirming the viable scientific stability of [IKOR's] product"; and

5          e.      One of the "most important discoveries in [IKOR's] process development

6          to date is IKOR's ability to remove endotoxin from its blood products and

7          validated by successfully conducting animal trials with rabbits and pigs."

8          41.   On or about August 2, 2006, Dr. Wong and Dr. Wai traveled to San Francisco to

9    meet with Dr. Tye and Dr. Canton.  This visit was part of Plaintiff's due diligence efforts to

10   obtain more information about IKOR, the development of its products, and its operations, so

11   Plaintiff could determine whether it should invest in IKOR and, if so, to what extent.  During the

12   August 2, 2006 meeting, Dr. Canton gave an oral presentation to Dr. Wong and Dr. Wai about

13   IKOR's company overview, business, and product development.  In so doing, Dr. Canton

14   repeated the above representations that were in the IKOR Business Plan.

15         42.   Very much impressed by the statements made in the IKOR Business Plan and in Dr.

16   Canton's oral presentations, Plaintiff agreed to investigate IKOR further as an investment

17   opportunity.  Accordingly, Dr. Wong and Dr. Wai made a second trip to IKOR in or around the

18   end of August 2006 to visit IKOR's Aberdeen, South Dakota facility.

19         43.   During Logtale's end of August 2006 visit, IKOR's Dr. Tye and Mr. Stephen Tye

20   (son of Dr. Tye) gave Dr. Wong and Dr. Wai a tour of IKOR's Aberdeen facility and performed a

21   number of laboratory demonstrations on analytical instruments that related to IKOR's products,

22   covering subjects including hemoglobin concentration, protein analysis, Hemox-Analyzer P50

23   analysis, and the equipment for hemoglobin purification.  Dr. Tye also gave a PowerPoint

24   presentation of IKOR's business, including the key points of IKOR's alleged accomplishments to

25   date.  Specifically, IKOR's PowerPoint presentation made several representations – which Dr.

26   Tye verbally repeated during the course of the presentation -- including, but not limited to, that, as

27   of June 2006:

28         a.      IKOR had developed a pilot manufacturing facility that was then producing

SQUIRE SANDERS
(US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ                              9

1     *IKOR 2084* (blood treatment) products for pre-clinical trials;

2         b.      IKOR had conducted preliminary animal trials in 60 rabbits and pigs,

3     demonstrating that IKOR's products had safety, stability and tolerance, which

4     were "key success factors for regulatory submissions";

5         c.      IKOR had conducted independent, third-party trials to confirm the safety of

6     IKOR's products with animal models;

7         d.      *IKOR-2084* and *IKOR-VET*, IKOR's blood treatment products, had a long

8     shelf life of over two years when refrigerated;

9         e.      *IKOR-2084* and *IKOR-VET* stored without refrigeration for 30 days or

10    more without any adverse effect;

11        f.      IKOR's process development to date was its ability to remove endotoxin

12    from its blood products and was validated by successfully conducting animal trials

13    with rabbits and pigs; and

14        g.      IKOR had conducted unofficial testing of *IKOR-2084* on humans and the

15    product appeared safe for humans, such that IKOR was developing a human

16    product for clinical trials and for sales in the Chinese and global markets.

17    44.   Plaintiff tried to perform its own due diligence research on IKOR's business and

18    products, including to attempt to verify the accuracy of IKOR's representations.  After a

19    reasonable and good faith due diligence period lasting approximately three months, Plaintiff did

20    not discover any reason to doubt the veracity of IKOR's assertions and representations regarding

21    the performance of IKOR's products and the development of IKOR's capabilities.

22    45.   Consequently, Plaintiff negotiated and ultimately entered into the Purchase

23    Agreement (Exhibit 1) with IKOR on or about October 20, 2006, and purchased 1,999,840 shares

24    of IKOR's Series A Convertible Preferred Stock at a price of $2.5002 per share or $5,000,000.

25    Plaintiff's decision to invest in IKOR was premised in large part on its understanding (as

26    furnished by Dr. Canton and Dr. Tye) of the progress and development of IKOR's products, the

27    IKOR Technology and its business, as described above, as well as on its understanding of what

28    rights and privileges Plaintiff would hold in IKOR as the majority holder of Series A shares of

SQUIRE SANDERS
(US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ                                    10

1    preferred stock.

2         46.   IKOR's directors and officers owed a fiduciary duty toward IKOR and its

3    shareholders, which included Plaintiff once Plaintiff became a shareholder of IKOR.

4         47.   In late 2007, however, Plaintiff began to learn that IKOR's business and products

5    were not as Plaintiff had been led to believe since it had become a shareholder of IKOR.  In

6    particular, Plaintiff discovered that:

7              a.      Contrary to IKOR's representation that it had developed a pilot

8              manufacturing facility that was then producing IKOR blood treatment products for

9              pre-clinical trials, IKOR in fact had only a small non-GMP laboratory that was not

10             able to produce *IKOR-2084* for any type of trials.

11             b.      Contrary to IKOR's representation that it had conducted preliminary

12             animal trials in 60 rabbits and pigs demonstrating that IKOR's products have

13             safety, stability and tolerance, which are "key success factors for regulatory

14             submissions," in fact IKOR was never able to produce any formal report of these

15             alleged animal trials – despite numerous demands by Plaintiff.  Indeed, Plaintiff

16             learned that IKOR had not conducted any stability testing on its products prior to

17             at least July 2007, a year after IKOR had claimed that such testing had been done.

18             c.      Contrary to IKOR's representation that it had conducted independent,

19             third-party trials to confirm the safety of IKOR's products with animal models,

20             IKOR actually had never conducted any independent third party study.  In fact,

21             Plaintiff and NEWAI assisted IKOR in conducting a pilot safety study at Bridge

22             Laboratories in Beijing, People's Republic of China in September 2007.

23             d.      During that Bridge Laboratories study, Plaintiff learned that the quality of

24             the *IKOR-2084* product was not as represented, either.  Although IKOR had

25             represented that this blood treatment product had a long shelf life of over two

26             years when refrigerated, Plaintiff discovered in September 2007 that after only a

27             short time under refrigerated conditions, the samples of *IKOR-2084* used for the

28             Bridge Laboratories study contained unwanted precipitates and particulates.  In

**SQUIRE SANDERS**
**(US) LLP**
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ                                    11

addition, testing revealed that the IKOR blood treatment products still had significant levels of endotoxins, contrary to IKOR's representation that all endotoxins had been removed.

e.      Also during the same Bridge Laboratories study, Plaintiff discovered that *IKOR-2084* was not stable when kept for less than 20 days in an environment with temperatures between 2 and 10 degrees Celsius.  This laboratory finding rendered false, or at best misleading, IKOR's representation that *IKOR-2084* and *IKOR-VET* stored without refrigeration for 30 days or more without any adverse effect.

f.      It was a gross misrepresentation to even suggest that human clinical trials could begin because the product's stability had not been established, this class of products was at a very early stage in the FDA approval process, and the product was not eligible for current GMP status to allow any type of outsourcing to contract manufacturers.

48.   Plaintiff is informed and believes, and on that basis alleges, that IKOR, by and through its defendant officers and directors, at all times knew the above to be the true state of IKOR's business and products but, in breach of their fiduciary duties, never informed IKOR's shareholders, including and especially Plaintiff.

49.   Plaintiff is informed and believes, and on that basis alleges, that the defendants, at all relevant times, knew that the true state of the development of IKOR's products -- and consequently the true value of IKOR's business -- was a matter of importance to IKOR and to its shareholders, including and especially Plaintiff.  The defendants' above misrepresentations and omissions were material to the financial worth of IKOR, its products and its business.

50.   Plaintiff is further informed and believes, and on that basis alleges, that the defendants' failure to apprise Plaintiff of the true state of IKOR's products and business was willful, intentional, and with malice, oppression and fraud, with the sole goal of hiding such information from Plaintiff to Plaintiff's detriment and harm.

**The Surreptitious Issuance Of Shares Of IKOR Stock**

51.   In or around April 2010, as part of its investigation into IKOR's activities, Plaintiff

SQUIRE SANDERS
(US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ                    12

1   learned that Dr. Canton and Dr. Tye had approved the issuance of certain shares of IKOR

2   Common Stock -- purportedly on behalf of IKOR's shareholders, directors and officers -- to three

3   different companies without giving Plaintiff notice of these issuances or the opportunity to

4   exercise any of its rights under the Investors' Rights Agreement.

5        52.   Specifically, Plaintiff is informed and believes that:

6           a.     By action dated August 4, 2009, Dr. Tye and Dr. Canton authorized and

7           had ratified the issuance of 28,572 shares of IKOR Common Stock to Byron &

8           Louwane Parsons, by stock certificate No. I-001, at the price of $3.50 per share;

9           b.     By action dated October 27, 2009, Dr. Tye and Dr. Canton authorized and

10          had ratified the issuance of 64,572 shares of IKOR Common Stock to Parsons

11          Medical Investment Group, LLC, by stock certificate No. I-002, at the price of

12          $3.50 per share; and

13          c.     By action dated December 31, 2009, Dr. Tye and Dr. Canton authorized

14          and had ratified the issuance of 85,716 shares of IKOR Common Stock to Stewart

15          WMK, LLC, by stock certificate No. I-003, at the price of $3.50 per share.

16       53.   In or around February 2011, Plaintiff also learned that, by action dated March 6,

17  2010, Dr. Tye and Dr. Canton authorized and had ratified the issuance of 10,000 shares of IKOR

18  Common Stock to Joel Kleinfeld, by stock certificate No. I-004, at the price of $3.50 per share.

19       54.   Plaintiff is further informed and believes, on that basis alleges, that Dr. Tye and Dr.

20  Canton authorized and had ratified, between March 2010 and December 2010, the issuance of a

21  total of 27,500 shares of IKOR Common Stock at $3.50 per share, as well as a total of 1,367,000

22  shares of common stock at $0.0001 per share, to unknown individuals and/or entities.

23       55.   None of the defendants provided Plaintiff with notice of any of these issuances at the

24  time they were made.  Nor did any of the defendants provide Plaintiff with the option to exercise

25  its rights under the Investors' Rights Agreement, as set forth below.

26  **The Surreptitious Sale Of IKOR's Aberdeen, South Dakota Facility**

27       56.   Plaintiff is informed and believes, and on that basis alleges, that IKOR's sole

28  manufacturing plant located in Aberdeen, South Dakota was at all material times a key asset of

SQUIRE SANDERS
(US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ     13

1   substantial value to IKOR and, thus, to its shareholders, including Plaintiff.  The Aberdeen

2   facility manufactured IKOR products since 2007.

3          57.   Plaintiff discovered that IKOR sold and assigned -- on information and belief, during

4   the summer of 2011 -- its Aberdeen facility to a company called Oxenox LLC ("Oxenox").

5   Plaintiff is informed and believes, and on that basis alleges, that the sale and assignment was

6   made for approximately $900,000.  Plaintiff is further informed and believes, and on that basis

7   alleges, that the sale also included a license of IKOR Technology for the veterinary market

8   (canine anemia) in certain geographical markets, the right to manufacture IKOR-488, and all

9   related know-how.

10          58.   Plaintiff is informed and believes, and on that basis alleges, that at all material times

11   Dr. Tye was and is a shareholder and officer of Oxenox.  Plaintiff, as a preferred shareholder of

12   IKOR, was never informed of, or consulted regarding, either the negotiation or execution of the

13   sale and assignment of substantial IKOR assets (the Aberdeen facility and IKOR Technology) to

14   Oxenox.  These transactions were approved without the knowledge of or consent by Dr. Norman

15   Wai, who was Plaintiff's appointed member of the IKOR Board as per the Purchase Agreement,

16   as these transactions took place during the time that Dr. Wai was improperly excluded from

17   participating on the IKOR Board in breach of the Amended and Restated Articles of

18   Incorporation and of the fiduciary obligations owed by the IKOR Board to Plaintiff.  Indeed, the

19   IKOR Board never sought Plaintiff's consent for this related transaction in view of Dr. Tye's

20   positions with both IKOR and Oxenox.

21          59.   While the proceeds of the Oxenox transaction should have been used to pay for

22   Plaintiff's redemption of its shares, they were not.  Plaintiff is informed and believes, and on that

23   basis alleges, that the proceeds of the Oxenox transaction were used to superficially "clean up"

24   IKOR's balance sheet and eliminate and/or mask disclosed liabilities in hopes of attracting new

25   investors.  Plaintiff is further informed and believes, and on that basis alleges, that the monies

26   owed to Plaintiff for redemption of its shares of preferred IKOR stock were not disclosed to

27   potential new investors on the unofficial, unaudited financial statements provided to those

28   potential new investors.  Indeed, none of the proceeds of the Oxenox sale have been provided to

SQUIRE SANDERS
(US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ                    14

1   Plaintiff in compliance with Plaintiff's request to redeem its shares of IKOR preferred stock.

2      **THE UNAUTHORIZED PROPOSED REVERSE MERGER OF IKOR WITH SCENIC CITY**

3      60.  On June 30, 2011, Plaintiff received by FedEx a notice from IKOR, through Dr.

4   Canton, informing Plaintiff that IKOR would hold a special shareholders' meeting on July 6,

5   2011 to vote on a proposed merger with a third party company, which was set forth in an enclosed

6   draft shareholder resolution (the "July Resolution").  A true and correct copy of the notice of

7   special shareholders' meeting with the enclosed July Resolution is attached as Exhibit 4.

8      61.  The July Resolution proposed shareholder authorization of:

9         a)     A Letter of Intent that IKOR had entered into to effect a reverse merger

10   with Scenic City, F-10-II, a Tennessee corporation ("Scenic City"), following which

11   IKOR would retain ownership control, management and board control of the merged

12   entities;

13         b)     The reverse merger with Scenic City, subject to the terms and conditions

14   set forth in the signed Letter of Intent with Scenic City and other enumerated conditions;

15         c)     An expansion of the IKOR Board to five members, including a new Chief

16   Executive Officer and a new Chief Financial Officer to be employed by IKOR at the close

17   of escrow and to serve on the IKOR Board, and a new outside director; and

18         d)     IKOR becoming a public (reporting) company as a result of the reverse

19   merger and applying for listing on the appropriate NASDAQ Exchange at the close of

20   escrow.

21      62.  Plaintiff is informed and believes, and on that basis alleges, that Scenic City is a

22   corporate shell.  The July Resolution was the first time Plaintiff had ever heard of Scenic City, of

23   any Letter of Intent between IKOR and Scenic City, of any contemplated reverse merger or of

24   any proposed expansion of or change to the IKOR Board.

25      63.  On July 4, 2011, Plaintiff sent Dr. Canton correspondence:

26         a)     Challenging the notice of the shareholders' meeting as improper under

27   IKOR's bylaws;

28         b)     Expressing its shock and dismay at learning that IKOR had entered into a

**SQUIRE SANDERS**
**(US) LLP**
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ      15

1    Letter of Intent with Scenic City without seeking Plaintiff's consent, as required by

2    Article IV(B), Section 6(g) of the Amended and Restated Articles of

3    Incorporation, and reserving Plaintiff's rights to disapprove any signed Letter of

4    Intent with Scenic City;

5    c)    Communicating its surprise at the proposed changes in the IKOR Board,

6    which Plaintiff reminded IKOR require Plaintiff's approval pursuant to Article

7    IV(B), Section 6(k) of the Amended and Restated Articles of Incorporation;

8    d)    Informing IKOR that the shareholders' meeting notice, and by extension

9    the contemplated July 6, 2011 meeting, were invalid in view of IKOR's failure to

10    follow the above corporate requirements;

11    e)    Requesting that IKOR provide sufficient information regarding the

12    intended transactions and change of directors for Plaintiff's consideration; and

13    f)    Warning IKOR that, if it proceeded to convene the special shareholders'

14    meeting on July 6, 2011, Plaintiff would challenge the validity of that meeting and

15    the validity of any resolutions resulting from that meeting.

16    64.   On July 6, 2011, Dr. Canton responded on behalf of IKOR.  Among other things, Dr.

17    Canton:

18    a)    Maintained that the notice of the July 6, 2011 special shareholders'

19    meeting was valid;

20    b)    Asserted that the reverse merger with Scenic City was a transaction in the

21    best interests of all IKOR shareholders and that would be supported by a private

22    placement and a public offering that would re-capitalize IKOR, bring in "new

23    experienced management and new investors for IKOR to move the company to

24    filing its drugs and gaining approvals";

25    c)    Asserted that IKOR had the authority to conduct the reverse merger

26    because, according to Dr. Canton, provided that IKOR retained majority control of

27    the resulting company (which it purportedly would), the Investors' Rights

28    Agreement superseded the requirement in the Amended and Restated Articles of

SQUIRE SANDERS
(US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ                     16

1    Incorporation of obtaining Plaintiff's approval;

2         d)      Maintained that new directors and shareholders would benefit IKOR; and

3         e)      Informed Plaintiff that, by an unspecified 2011 resolution of the IKOR

4                 Board, without any notice to Plaintiff, Plaintiff's appointed director, Dr. Wai, had

5                 been removed from the IKOR Board because of his alleged failure to attend two

6                 board meetings and to respond to board meeting notifications.

7    65.   Dr. Canton's/IKOR's July 6, 2011 response and the purported justifications of

8    IKOR's and his actions are without merit.

9    66.   To protect its rights, Plaintiff did not attend the July 6, 2011 special shareholders'

10   meeting, which Plaintiff maintains is invalid for the reasons described in its July 4, 2011

11   correspondence.  At this point in time, Plaintiff does not know if IKOR held a special

12   shareholders' meeting on July 6, 2011 and, if so, which resolutions, if any, were passed at such a

13   meeting.  However, Plaintiff is informed and believes, and on that basis alleges, that no merger

14   between IKOR and Scenic City has yet occurred.

15   67.   The untenable positions and unauthorized acts of the Defendants described above

16   precipitated the filing of this litigation.

17                          **FIRST CLAIM FOR RELIEF**

18           **(Injunction of Unauthorized Corporate Acts – By Plaintiff Against IKOR)**

19   68.   Plaintiff incorporates the allegations in paragraphs 1 through 67 as though fully set

20   forth herein.

21   69.   Because IKOR is incorporated in South Dakota, that state's laws govern IKOR's

22   internal corporate issues.

23   70.   South Dakota law, including, but not limited to, South Dakota Codified Laws

24   ("SDCL") §§47-1A-304 and 47-1A-861, provide that a shareholder may commence a judicial

25   proceeding against the corporation to enjoin a corporate act or transaction that the shareholder

26   contends is *ultra vires* and that a court may enjoin any such unauthorized corporate act.

27   71.   As set forth above, (a) IKOR negotiated a Letter of Intent for a reverse take-over

28   with Scenic City without seeking Plaintiff's approval or consent, which is expressly required by

SQUIRE SANDERS
(US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ                    17

1   the company's Amended and Restated Articles of Incorporation before any such transaction can

2   take place; (b) IKOR contends that it may effect a reverse merger with Scenic City without

3   Plaintiff's approval; and (c) IKOR contends that it may alter the size and composition of the

4   IKOR Board without Plaintiff's approval.

5        72.   These purported corporate acts violate Article IV(B), Sections 6(g), 6(k) and 6(l) of

6   the Amended and Restated Articles of Incorporation.

7        73.   Therefore, Plaintiff is entitled to judgment:  (a) enjoining IKOR from conducting the

8   reverse merger without Plaintiff's consent; and (b) enjoining IKOR from changing the number

9   and composition of the IKOR Board without Plaintiff's consent.

10                        **<u>SECOND CLAIM FOR RELIEF</u>**

11             **(Breach of Contract – By Plaintiff Against All Defendants)**

12        74.   Plaintiff incorporates the allegations in paragraphs 1 through 67 as though fully set

13   forth herein.

14        75.   As set forth above, Plaintiff and the defendants entered into the Investors' Rights

15   Agreement on or about October 20, 2006.

16        76.   Under Section 2.1 of the Investors' Rights Agreement, the defendants covenanted to

17   deliver the indicated categories of financial documents within the periods of time specified.  (*See*

18   Exhibit 3 at 12-13.)

19        77.   Pursuant to Section 3.7 of the Investors' Rights Agreement, the agreement, all acts

20   and transactions pursuant to it, and the rights and obligations of the parties to the agreement are

21   governed by California law without giving effect to principles of conflicts of law.

22        78.   As set forth above, Plaintiff made repeated requests between October 2009 and

23   January 2010 that IKOR provide financial information and the audited annual financial

24   statements of IKOR for the fiscal years of 2006, 2007, 2008, 2009 or 2010.

25        79.   As also set forth above, the defendants consistently failed to deliver the requested

26   documents.  The defendants' failure to provide Plaintiff with the requested documents by the

27   required time constitutes a breach of Section 2.1 of the Investors' Rights Agreement.

28        80.   In addition, Section 2.3 of the Investors' Rights Agreement provides that each time

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ                  18

IKOR proposes to offer any shares of, or securities convertible into or exercisable for any shares of, any class of its capital stock, IKOR must first make an offering of such shares to Plaintiff in accordance with the following provisions:

        a.      IKOR must deliver a notice to Plaintiff stating (i) its bona fide intention to offer such shares, (ii) the number of such shares to be offered, and (iii) the price and terms, if any, upon which IKOR proposes to offer such shares.  Any such notice must comply with the requirements of Section 3.5 of the Investors' Rights Agreement.

        b.      Within fifteen (15) days after delivery of such notice, Plaintiff may elect to purchase or obtain, at the price and on the terms specified in the notice, up to that portion of such shares which equals the proportion that the number of shares of common stock issued and held, or issuable upon conversion and exercise of all convertible or exercisable securities then held, by Plaintiff bears to the sum of (A) the total number of shares of common stock then outstanding and (B) shares of common stock issuable to employees, consultants or directors pursuant to a stock option plan, or other stock plan approved by the IKOR Board.

        c.      IKOR may then, during the 45-day period following the expiration of the Plaintiff's period to elect to purchase or obtain the shares, offer the remaining unsubscribed portion of the shares to any person or persons at a price not less than, and upon terms no more favorable to the offeree than those specified in the notice to Plaintiff.  If IKOR does not enter into an agreement for the sale of the shares within such period, or if such agreement is not consummated within sixty (60) days after the execution thereof, the right provided thereunder shall be deemed to be revived and such shares shall not be offered unless first reoffered to Plaintiff in accordance with the requirements of the Investors' Rights Agreement.

    81.   Plaintiff did not receive any notice from any of the defendants for any of the issuances of shares of IKOR Common Stock described above.  Plaintiff is informed and believes, and on that basis alleges, that the defendants did not provide any such notice to Plaintiff for any

SQUIRE SANDERS
(US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ

19

of those surreptitious issuances of shares of IKOR Common Stock described above.

82.   The defendants' failure to provide the required notice of the secret issuances of IKOR Common Stock described above deprived Plaintiff of its rights of first offer under Section 2.3 of the Investors' Rights Agreement.

83.   Plaintiff is entitled to damages to be proven at trial resulting from the defendants' breaches of the Investors' Rights Agreement and to judgment ordering the defendants to promptly provide the financial documents that Plaintiff requested, as required by the Investors' Rights Agreement.

### THIRD CLAIM FOR RELIEF

**(Breach of Fiduciary Duties – By Plaintiff Against Dr. Canton and Dr. Tye)**

84.   Plaintiff incorporates the allegations in paragraphs 1 through 83 as though fully set forth herein.

85.   Because IKOR is incorporated in South Dakota, that state's laws govern IKOR's internal corporate issues, including the duties owed by IKOR's directors and officers to IKOR and its shareholders.

86.   Dr. Canton and Dr. Tye, as directors and officers of IKOR, owe -- and at all pertinent times owed -- fiduciary duties under South Dakota statutory and common law to IKOR and to its shareholders, including Plaintiff, when discharging their duties as directors and officers.  These duties include, but are not limited to, the duty to act in good faith and in a manner that they reasonably believe to be in the best interests of the corporation and its shareholders, to act with the care that a person in a similar position would reasonably believe appropriate under similar circumstances, and to act in a manner consistent with the requirements of the corporation's articles of incorporation and by-laws.

87.   Plaintiff is informed and believes, and on that basis alleges, that Dr. Canton and Dr. Tye engaged in the above-described conduct involving BeefTech, which conduct was, on information and belief, not in the best interests of IKOR or its shareholders and that was not sufficiently explained or documented to IKOR or its shareholders, even upon Plaintiff's specific and repeated requests.  In light of Dr. Canton's and Dr. Tye's connections with BeefTech and

SQUIRE SANDERS
(US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ

20

their refusal to provide documentation supporting IKOR funds paid to BeefTech, Plaintiff is further informed and believes, and on that basis alleges, that these transactions are related-party transactions undertaken in breach of Dr. Canton's and Dr. Tye's fiduciary duties, including the duty of loyalty, the duty to act in good faith, and the duty to act in the best interests of IKOR and its shareholders.  These related party transactions also constitute a breach of fiduciary duties because they were not entered into with the approval of Plaintiff, the holder of the majority of IKOR Series A Convertible Preferred Stock, as required by Article IV, Section 6(u) of IKOR's Amended and Restated Articles of Incorporation.

88.   Plaintiff is informed and believes, and on that basis alleges, that Dr. Canton and Dr. Tye breached their fiduciary duties -- including the duty of loyalty, the duty to act in good faith, and the duty to act in the best interests of IKOR and its shareholders -- by negotiating and executing the Oxenox related party transaction.  Among other breaches of their fiduciary duties, Dr. Canton and Dr. Tye failed to disclose to Plaintiff, and did not seek Plaintiff's approval for, Dr. Tye's competing positions as a shareholder and director of IKOR and as a shareholder and officer of Oxenox before selling IKOR assets to Oxenox.  Such notice to and consent by Plaintiff, the holder of the majority of IKOR Series A Convertible Preferred Stock, was required by Article IV, Section 6(u) of IKOR's Amended and Restated Articles of Incorporation.  Plaintiff is further informed and believes, and on that basis alleges, that the Oxenox related party transaction was not in the best interests of IKOR and its shareholders because it deprived IKOR of its sole facility capable of manufacturing IKOR's products, a substantial and strategically important asset that IKOR no longer holds, which is to the detriment of Plaintiff and its right to redeem its shares in IKOR.

89.   Plaintiff's consent for the Oxenox transaction was also required by Article IV.B, Section 6(g) of IKOR's Amended and Restated Articles of Incorporation, because the Oxenox transaction involved the sale of substantially all of IKOR's real property assets and the license or assignment of substantial IKOR intellectual property assets.  Dr. Tye's and Dr. Canton's failure to secure such consent, and their apparent decision to complete the transaction very shortly after Dr. Wai (Plaintiff's director) had been improperly removed from the IKOR Board, constitutes a

SQUIRE SANDERS
(US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ

21

1    breach of Article IV.B, Section 6(g) and, accordingly, of their fiduciary duties to Plaintiff.

2          90.   In addition, Plaintiff is informed and believes, and on that basis alleges, that Dr.

3    Canton and Dr. Tye breached their fiduciary duties by not using, in compliance with Article

4    IV(B), Section 3(c) of the Amended and Restated Articles of Incorporation, at least some of the

5    proceeds received from the Oxenox transaction to allow Plaintiff to redeem at least some of its

6    shares of preferred IKOR stock, as Plaintiff had previously demanded.

7          91.   Dr. Canton's and Dr. Tye's conduct with respect to the Oxenox related party

8    transaction proximately injured Plaintiff in a manner separate and distinct from any other IKOR

9    shareholders because the proceeds from the Oxenox transaction were legally available to IKOR to

10   redeem at least some of Plaintiff's shares of preferred IKOR stock but were not so used.  No

11   shares of IKOR preferred stock other than Plaintiff's were subject to a request for redemption of

12   shares at the time of the Oxenox related party transaction.  Instead, Plaintiff is informed and

13   believes, and on that basis alleges, that the defendants attempted to conceal their liability to

14   Plaintiff (*i.e.,* Plaintiff's request for redemption of preferred shares) from potential new investors

15   by concealing that liability in unofficial, unaudited financial statements.

16         92.   In addition, as set forth above, Plaintiff is informed and believes, and on that basis

17   alleges, that Dr. Canton and Dr. Tye breached their fiduciary duties to IKOR and its shareholders

18   by taking action intended to result in a merger or change in corporate form of IKOR (*e.g.,*

19   negotiating the Letter of Intent of a reverse merger with Scenic City) without seeking or securing

20   Plaintiff's approval, contrary to the unambiguous requirements set forth in Article IV(B), Section

21   6 of IKOR's Amended and Restated Articles of Incorporation.

22         93.   Further, Plaintiff is informed and believes, and on that basis alleges, that Dr. Canton

23   and Dr. Tye acted in bad faith and breached their fiduciary duties to Plaintiff by failing to disclose

24   to it and the other IKOR shareholders the true state of development and testing of IKOR's

25   products, and accordingly the true financial worth of IKOR's business, as set forth above.

26         94.   Moreover, Plaintiff is informed and believes, and on that basis alleges, that Dr.

27   Canton and Dr. Tye acted in bad faith and breached their fiduciary duties to Plaintiff by, as

28   described above, surreptitiously approving and having ratified the issuance of a total of 1,583,360

SQUIRE SANDERS
(US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ                    22

1   shares of IKOR Common Stock without providing prior notice to Plaintiff or an opportunity to

2   Plaintiff to exercise its rights under the Investors' Rights Agreement.

3         95.   As a proximate result of Dr. Canton's and Dr. Tye's breaches of their fiduciary

4   duties, Plaintiff has suffered loss and damages in an amount to be proven at trial, but believed to

5   be in excess of $5,000,000.  Because Plaintiff is the sole holder of IKOR Series A Preferred Stock

6   -- which carries special rights and preferences as described in the Amended and Restated Articles

7   of Incorporation, including the right to first approve certain corporate acts -- Plaintiff's injury is

8   separate and distinct from that of any other IKOR shareholders and entitles Plaintiff to pursue this

9   claim individually, rather than derivatively.

10         96.   Plaintiff is informed and believes, and on that basis alleges, that Dr. Canton's and Dr.

11   Tye's conduct described above was oppressive, willful, wanton, malicious, and/or in conscious

12   and deliberate disregard of Plaintiff's rights, and thus warrants the imposition of punitive or

13   exemplary damages.

14   **FOURTH CLAIM FOR RELIEF**

15   **(Breach of Implied Covenant of Good Faith and Fair Dealing – By Plaintiff Against IKOR)**

16         97.   Plaintiff incorporates the allegations in paragraphs 1 through 96 as though fully set

17   forth herein

18         98.   As set forth above, IKOR is the assignee and owner of the IKOR Patents.  Plaintiff

19   was interested in and valued the IKOR Patents, which was one of the primary reasons for

20   Plaintiff's investment in IKOR.  IKOR is also the owner of the IKOR Technology.  Plaintiff was

21   interested in and valued this intellectual property, which was one of the primary reasons for

22   Plaintiff's investment in IKOR.

23         99.   As provided by section 5.1(k) of the Purchase Agreement, one of the conditions to

24   closing was the filing with the South Dakota Secretary of State of the Amended and Restated

25   Articles of Incorporation, which, among other things, gave Plaintiff the ability to redeem its

26   shares of Series A Preferred Stock at a per share amount that was twice the per share purchase

27   price.

28         100. Accordingly, on or about October 20, 2006, Plaintiff and IKOR entered into the

SQUIRE SANDERS
(US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ                    23

1  Purchase Agreement, a true and correct copy of which is attached hereto as Exhibit 1. Pursuant to

2  the Purchase Agreement, Plaintiff purchased 1,999,840 shares of IKOR Series A Convertible

3  Stock at a purchase price of $2.5002 per share. As a result of this substantial investment, Plaintiff

4  became the majority shareholder of Preferred Stock in IKOR and appointed Dr. Wai as its

5  director on the IKOR Board.

6      101. The Purchase Agreement contains an implied covenant of good faith and fair dealing,

7  pursuant to which IKOR had a duty to refrain from doing anything that would render performance

8  of the Purchase Agreement impossible or that would impair Plaintiff's rights and reasonable

9  expectations to receive the benefits of the Purchase Agreement, as well as a duty to do everything

10  that the Purchase Agreement presupposes that each party will do to accomplish its purpose.

11      102. Plaintiff is informed and believes, and thereupon alleges, that IKOR breached the

12  implied covenant of good faith and fair dealing in the Purchase Agreement in a number of ways,

13  including, but not limited to:

14          a.      failing to honor Plaintiff's notice of election to redeem most of its shares of

15  Series A Preferred Stock, as set forth above;

16          b.      wrongfully and without justification removing Dr. Wai from the IKOR

17  Board, as described above;

18          c.      immediately after removing Plaintiff's director from the IKOR Board,

19  selling a key asset of IKOR -- the Aberdeen manufacturing facility -- to Oxenox and assigning

20  certain rights to the IKOR Patents and IKOR Technology without notifying or seeking Plaintiff's

21  required consent, as discussed above; and

22          d.      using all proceeds of the unauthorized and surreptitious sale of the

23  Aberdeen facility to Oxenox to eliminate liabilities on IKOR's balance sheet to fraudulently

24  induce new investment rather than using those proceeds to comply with Plaintiff's outstanding

25  request for redemption of the majority of its preferred shares of IKOR stock.

26      103. Plaintiff is informed and believes, and thereupon alleges, that these actions constitute

27  a breach of the implied covenant of good faith and fair dealing because they were intentionally

28  committed to frustrate the primary benefits of the Purchase Agreement: (a) to attract Plaintiff's

SQUIRE SANDERS
(US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ                    24

1  $5 million investment by promising certain intellectual property rights in a company capable of

2  manufacturing the IKOR products that embody, incorporate or reflect the IKOR Patents and/or

3  IKOR Technology; (b) to provide Plaintiff with a voice on the IKOR Board through a preferred

4  director (Dr. Wai); (c) to provide Plaintiff with the ability, pursuant to the notification and

5  consent requirements for preferred shareholders set forth in the Amended and Restated Articles of

6  Incorporation, to direct to some extent significant corporate decisions; and (d) to incentivize

7  Plaintiff to invest by promising to redeem its preferred shares for a set price as set forth in the

8  Amended and Restated Articles of Incorporation.

9      104. As a proximate result of IKOR's actions described above, Plaintiff has been deprived

10  the benefits of the Purchase Agreement and has been materially damaged in an amount to be

11  proven at trial, but believed to be in excess of the jurisdictional minimum of this Court.

12

13                          **PRAYER FOR RELIEF**

14      Plaintiff respectfully requests that the Court enter judgment in its favor and:

15      1.     Enjoin IKOR from entering into the reverse merger with Scenic City or from altering

16  the size and composition of the IKOR Board, or from taking any further action intended to effect

17  these ends, until and unless IKOR has complied with all applicable provisions of its Amended

18  and Restated Articles of Incorporation and by-laws, including, but not limited to, the requirement

19  of Plaintiff's approval;

20      2.     Order IKOR to deliver promptly to Plaintiff the audited financial statements

21  requested and described above;

22      3.     Award Plaintiff compensatory damages in an amount to be proven at trial, but in any

23  event no less than $5,000,000;

24      4.     Award Plaintiff all consequential and incidental damages, as permitted by law;

25      5.     Award Plaintiff punitive damages, as permitted by law;

26      6.     Award Plaintiff its attorneys' fees and costs, as permitted by law;

27      7.     Award Plaintiff prejudgment and post-judgment interest on any recovery, as

28  permitted by law; and

SQUIRE SANDERS
(US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ                25

1          8.     Award Plaintiff any other legal and equitable relief that the Court determines is just

2    and proper.

3    Dated: February 13, 2012                              Respectfully submitted,

4                                                          SQUIRE SANDERS (US) LLP

5                                                          By:_____

6                                                               Mark C. Goodman
                                                                Xavier M. Brandwajn

7                                                          Attorneys for Plaintiff LOGTALE, LTD.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE SANDERS
(US) LLP
275 Battery Street, Suite 2600
San Francisco, California  94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ                              26

1

**DEMAND FOR JURY TRIAL**

2

Plaintiff respectfully demands a trial by jury of all issues so triable.

3

Dated: February 13, 2012

Respectfully submitted,

4

SQUIRE SANDERS (US) LLP

5

6

By: _____

Mark C. Goodman
Xavier M. Brandwajn

7

8

Attorneys for Plaintiff LOGTALE, LTD.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SQUIRE SANDERS**
**(US) LLP**
275 Battery Street, Suite 2600
San Francisco, California 94111

FIRST AMENDED COMPLAINT
CASE NO. 3:11-CV-05452-MEJ

27