IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOGTALE, LTD., | No. C 11-5452 CW |
|     Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS COUNTERCLAIMS; DENYING MOTION TO STRIKE; SETTING INITIAL CASE MANAGEMENT CONFERENCE |
|     v. | |
| IKOR, INC., et al., | |
|     Defendants. | |
| AND RELATED COUNTERCLAIMS AND THIRD-PARTY CLAIMS | |

Plaintiff and Counterdefendant Logtale, Ltd. moves to dismiss the counterclaims of Defendant and Counterclaimant IKOR, Inc. pursuant to Federal Rule of Civil Procedure 12(b)(6), and moves to strike portions of the counter-complaint pursuant to Rule 12(f). Defendants oppose the motion except as to dismissal of IKOR's unfair competition claim. The matter is fully briefed and the Court finds the matter suitable for decision without oral argument. Having considered the relevant legal authority and the papers filed by the parties, the Court grants the motion to dismiss and grants leave to amend, as more fully set forth below.

## BACKGROUND

The following facts are admitted or alleged in the first amended answer and counterclaim (1AA) to the first amended complaint (1AC).

Defendant IKOR, Inc. is a South Dakota corporation in the business of developing bovine-derived oxygen therapeutics and related technologies and is the owner of three U.S. patents

related to tetrameric hemoglobin. 1AC ¶¶ 4, 15. Defendants Canton and Tye are officers and directors of IKOR. 1AC ¶¶ 5-6.

On or about October 20, 2006, Logtale and IKOR entered into a Series A Preferred Stock Purchase Agreement (SPA), pursuant to which IKOR sold and issued 1,999,840 shares of its Series A Convertible Stock to Logtale at a purchase price of $2.5002 per share. 1AC ¶ 17 and Ex. 1. As a result of this five million dollar purchase, Logtale became the majority shareholder of preferred stock in IKOR. 1AC ¶ 17.

On or about October 20, 2006, IKOR issued Amended and Restated Articles of Incorporation, pursuant to which Logtale, as the majority shareholder of preferred stock in IKOR, had the right to elect, and did elect, Dr. Norman Wai to serve as a director on the IKOR Board. 1AC ¶¶ 18-19 and Ex. 2. IKOR's first amended third-party complaint names Dr. Wai as a third-party defendant, but IKOR has not filed proof that he has been served.

Also on or about October 20, 2006, Logtale and Defendants IKOR, Ross and Tye entered into an Investors' Rights Agreement. 1AC ¶ 20 and Ex. 3. One of the stated purposes of the Investors' Rights Agreement was to induce Logtale to purchase Series A Preferred Stock and invest funds in IKOR pursuant to the Purchase Agreement, as well as to govern Logtale's rights as an investor in IKOR. Id. Defendants allege that the negotiations leading to the Investors' Rights Agreement were made between IKOR and New World Mobile Holdings Ltd. (New World Mobile), a company incorporated in the Cayman Islands and a subsidiary of New World Development Company Limited (New World Development), a Hong Kong corporation. 1AA ¶ 20. Defendants allege that, at a relatively late stage in

2

the negotiations, New World Mobile requested that Logtale be substituted for New World Mobile as the investor.  Logtale was a "shelf-corporation" registered in the British Virgin Islands with no operational existence or significant capital at the time of substitution.  1AA ¶ 20.  The investors explained that substitution by Logtale was necessary because the proposed investment in IKOR would cause disclosure difficulties for New World Mobile and New World Development.  1AA ¶ 20.  IKOR names New World Mobile as a third-party defendant but has not filed proof that it has been served.

IKOR alleges that, on or about October 20, 2006, it entered into an Option and License and Manufacturing Agreement (License Agreement) with Logtale.  1AA, First Counterclaim ¶ 1 and Ex. A. The License Agreement granted Logtale a limited exclusive right to manufacture, sell and distribute certain IKOR biopharmaceuticals in designated territories, essentially Asia, Australia, and New Zealand.  Id.  IKOR alleges that, although a more complete agreement was initially contemplated, it was never executed, and IKOR and Logtale have been operating under the terms of the License Agreement since 2006.  Id.  The drugs licensed to Logtale under the alleged License Agreement are known as Oxygen Therapeutics and related hemoglobin-based biopharmaceuticals. 1AA, First Counterclaim ¶ 4.

IKOR alleges that Logtale created a Hong Kong corporation, New A-IKOR, whose name was later changed to New A Innovation Ltd. 1AA, First Counterclaim ¶ 3.  New A Innovation allegedly manufactures and sells the licensed biopharmaceutical products under the license granted to Logtale by IKOR.  Id.  New A

3

Innovation is named by IKOR as a third-party defendant but IKOR has not filed proof that it has been served.

IKOR cancelled the Logtale licenses in 2010, after having given notice that Logtale was in default for uncured breaches of the License Agreement, including, but not limited to, the marketing and manufacturing of IKOR's Oxygen Therapeutics and related pharmaceuticals.  1AA, First Counterclaim ¶ 10.

IKOR alleges that Logtale, as well as New A Innovation, New World Mobile and New World Development acting through Logtale, have breached the License Agreement by, among other things, withholding royalties, failing to comply with auditing and inspection requirements, and misusing IKOR's proprietary information.  1AA, First Counterclaim ¶ 14.

Logtale filed this action on November 9, 2011, and filed an amended complaint on February 13, 2012.  The operative complaint seeks injunctive relief and alleges claims against Defendants for breach of contract, breach of fiduciary duties and breach of the implied covenant of good faith and fair dealing.

Defendants filed an answer and counterclaim to the 1AC and third-party complaint on March 23, 2012, then filed the 1AA on May 21, 2012.  In its most recent pleading, IKOR alleges the following counterclaims against Logtale: (1) breach of the License Agreement, including failure to supply financial and manufacturing information required by the agreement; (2) theft of intellectual property under California's Uniform Trade Secrets Act; (3) unfair competition by copying IKOR's drugs without paying royalties; and (4) interference with prospective business opportunity by thwarting IKOR's efforts to obtain additional financing, in order

4

to drive IKOR into bankruptcy and acquire rights in IKOR's technology as a preferred shareholder in IKOR's liquidation.

Logtale moves to dismiss IKOR's counterclaims and to strike certain allegations. IKOR concedes that the third counterclaim for unfair competition fails to state a claim for relief, but otherwise opposes Logtale's motion to dismiss and motion to strike.

## LEGAL STANDARD

I.   Motion to Dismiss

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911

F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

## II. Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), the court may strike from a pleading "any redundant, immaterial, impertinent or scandalous matter." The purpose of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues. Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994). Matter is immaterial if it has no essential or important relationship to the claim for relief plead. Id. Matter is impertinent if it does not pertain and is not necessary to the issues in question in the case. Id. "Superfluous historical allegations are a proper subject of a motion to strike." Id. Motions to strike are disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice. Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996). They should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation. Colaprico v. Sun Microsystems, Inc., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).

6

DISCUSSION

I.  Breach of Contract

The first counterclaim for breach of contract alleges that on or about October 20, 2006, "IKOR and Logtale entered into a[n] Option and Licensing and Manufacturing Agreement," and that "[a]lthough a more complete agreement was initially contemplated, it was never executed, and thus both IKOR and Logtale have been operating under the terms of the Licensing Agreement since 2006." 1AA, First Counterclaim ¶ 1.  Logtale contends that IKOR fails to allege the existence of a valid License Agreement in support of its breach of contract claim.  As currently plead, the allegations are not sufficient to state a claim for breach of contract, but IKOR is granted leave to amend the allegations.

Courts apply general principles of contract interpretation when interpreting the terms and scope of a licensing agreement. Miller v. Glenn Miller Productions, Inc., 454 F.3d 975, 989 (9th Cir. 2006) (citing Mendler v. Winterland Production, Ltd., 207 F.3d 1119, 1121 (9th Cir. 2000)).  "'The fundamental goal of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting.'"  Id. (quoting United States Cellular Invest. Co. of Los Angeles v. GTE Mobilnet, Inc., 281 F.3d 929, 934 (9th Cir. 2002)).

The Option Agreement entered by IKOR (referred to as the Company) and Logtale (referred to as the Grantee) on October 20, 2006, states as follows:

> 1. GRANT OF OPTION.
>
> 1.1 In consideration of the sum of HK$1.00 now paid by the Grantee to the Company (receipt of which the Company hereby acknowledges), the Company

7

> hereby irrevocably and unconditionally grants to the Grantee the option (the "Option") to require the Company to enter into a license and manufacturing agreement (the "License and Manufacturing Agreement") with the Grantee or any company as the Grantee may direct, on the principal terms set out in the Schedule hereto.
>
> 1.2 The Option may be exercised by the Grantee at any time during the period commencing from the date of this Agreement to the first anniversary hereof by serving an option notice in the form attached hereto as Exhibit A (the "Option Notice") on the Company upon which the Option shall be deemed exercised.
>
> 1.3 Immediately after the service of the Option Notice, the Company and the Grantee shall negotiate diligently and in good faith, and use their best efforts to enter into the License and Manufacturing Agreement on the principal terms and conditions set out in the Schedule attached hereto within thirty (30) days after such service.

1AA, Ex. A (Docket No. 26-1) at 1.

Logtale contends that on the face of the Option Agreement, the parties expressed their intent that the attached License Agreement was a contingent, draft document, and further contends that IKOR has not alleged that the parties ever signed or entered into a written License Agreement. IKOR responds that the parties treated the License Agreement as binding on them and intended the writing to reflect their agreement.

If there is a manifest intention that the agreement is not binding until reduced to a formal writing that is executed by both parties, there is no binding contract until this occurs. <u>Rennick v. OPTION Care, Inc.</u>, 77 F.3d 309, 316 (9th Cir. 1996). On the other hand, "[w]hen parties intend that an agreement be binding, the fact that a more formal agreement must be prepared and executed does not alter the validity of the agreement." <u>Blix St. Records, Inc. v. Cassidy</u>, 191 Cal. App. 4th 39, 48 (2010).

8

"'Whether a writing constitutes a final agreement or merely an agreement to make an agreement depends primarily upon the intention of the parties. In the absence of ambiguity this must be determined by a construction of the instrument taken as a whole.'" Beck v. American Health Group Intl., Inc., 211 Cal. App. 3d 1555, 1562 (1989) (quoting Smissaert v. Chiodo, 163 Cal. App. 2d 827, 830 (1958)).

In support of its contention that the parties' agreement to negotiate and execute a license agreement is not a binding contract, Logtale cites Beck, where the court held that a letter drafting "the outline of our future agreement" was "merely an 'agreement to agree' which cannot be made the basis of a cause of action." 211 Cal. App. 3d at 1562-63. There, the court considered the writing to determine the parties' intention, and held that the language of the letter indicated an intent to forward the letter outlining the terms of the proposed agreement to corporate counsel "for the drafting of a contract," and to discuss the draft further. Beck, 211 Cal. App. 3d at 1563. The court in Beck found that the letter contemplated further negotiations and that no binding agreement would result until a formal contract was drafted by an attorney. Id. Although Logtale and IKOR outlined the proposed "terms and conditions" of their contemplated agreement in greater detail than did the parties in Beck, they nevertheless failed to memorialize their final agreement in writing. 1AA, Ex. A. The Option Agreement, on its face, evidences the parties' intent to enter into a written license agreement only after engaging in further negotiations.

9

The Schedule attached to the Option Agreement is entitled "Term Sheet - License and Manufacturing Agreement," and sets out the principal terms and conditions of the License Agreement. 1AA, Ex. A at 6. The Option Agreement provides that the option to enter into a license and manufacturing agreement "may be exercised" by Logtale by serving notice in the form attached to the Option Agreement, after which the parties would "use their best efforts to enter into the License and Manufacturing Agreement on the principal terms and conditions set out in the Schedule." Id. at 1. As currently plead, the first counterclaim does not allege that Logtale exercised the option or otherwise consented to the terms of the written licensing agreement. The allegation that the parties "have been operating under the terms of the Licensing Agreement since 2006" is insufficient to show the existence of a valid license agreement. However, additional factual allegations may demonstrate that the parties' actions evidence an agreement. "'Words are frequently but an imperfect medium to convey thought and intention. When the parties to a contract perform under it and demonstrate by their conduct that they knew what they were talking about the courts should enforce that intent.'" 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts § 749, p. 838.

IKOR seeks leave to amend its counterclaim, contending that the parties' correspondence demonstrates that they acted as if there was a licensing agreement between them. They refer to a letter from Dr. Wai on behalf of Logtale dated August 21, 2009, which acknowledges the validity of the terms of the License Agreement set forth in the schedule to the Option Agreement. Opp.

10

at 14. Because amendment may not be futile, the breach of contract claim is dismissed with leave to amend.

## II. Theft of Intellectual Property

Logtale seeks dismissal of the second counterclaim for theft of intellectual property. That counterclaim alleges that Logtale entered into the License Agreement to obtain rights to IKOR's trade secrets, has failed to pay royalties or otherwise comply with the License Agreement, and has misappropriated IKOR's technology and trade secrets with the intent to market IKOR's biopharmaceuticals in markets that IKOR owns, namely the United States and the European Union. 1AA, Second Counterclaim ¶¶ 17, 21. IKOR alleges, "At this point, it looks like theft." Id. ¶ 17. IKOR contends that Logtale continued to use IKOR's technology even after IKOR cancelled the alleged License Agreement, and that if Logtale prevails on its argument that there was never a licensing agreement, then Logtale's use of IKOR's technology was theft from the very beginning. IKOR further alleges that Logtale has plotted with the Chinese government and the Chinese military to acquire IKOR's trade secrets and patents for commercial and military use and competition with IKOR. 1AA, Second Counterclaim ¶ 22.

IKOR seeks relief under the Uniform Trade Secrets Act (UTSA), as adopted in California, Cal. Civ. Code § 3426 et seq. The UTSA defines a trade secret as

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to the

11

>
> public or to other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d). "Actual or threatened misappropriation may be enjoined" under this statute. Cal. Civ. Code § 3426.2(a).

In Bayer Corp. v. Roche Molecular Sys., Inc., the court recognized,

> A corporation misappropriates a trade secret when (1) it discloses or uses the trade secret of another without express or implied consent, and (2) at the time of the disclosure or use, it knew or had reason to know that its knowledge of the trade secret was derived from a person who owed a duty to the entity seeking relief to maintain the trade secret's secrecy or limit its use. Cal. Civ. Code § 3426.1(b)(2)(B)(iii). The Court may order affirmative acts to protect a trade secret in appropriate circumstances. Cal. Civ. Code § 3426.2(c).

Bayer Corp. v. Roche Molecular Sys., Inc., 72 F. Supp. 2d 1111, 1117 (N.D. Cal. 1999).

Logtale contends that IKOR has failed to identify with reasonable particularity how its intangible proprietary information is a property interest capable of being converted or stolen. To identify the trade secrets at issue, IKOR refer to its patent rights, defined in the alleged License Agreement as "[a]ll patents and patent applications of any kind anywhere in the world owned or controlled by IKOR during the term of the Agreement," and IKOR Know-How, defined as "[a]ny proprietary information, trade secrets, techniques, materials and data owned or controlled by IKOR." Opp. at 15; 1AA, Ex. A at 7. IKOR also refers to an application by third-party defendant New A Innovation for approval

12

1  to market an IKOR drug in Europe after IKOR terminated the License
2  Agreement with Logtale, but does not sufficiently identify the
3  drug or IKOR's ownership interest in it.
4      A claimant seeking relief for misappropriation of trade
5  secrets "must identify the trade secrets and carry the burden of
6  showing that they exist." MAI Sys. Corp. v. Peak Computer, Inc.,
7  991 F.2d 511, 522 (9th Cir. 1993). "The plaintiff 'should
8  describe the subject matter of the trade secret with sufficient
9  particularity to separate it from matters of general knowledge in
10 the trade or of special knowledge of those persons . . . skilled
11 in the trade.'" Imax Corp. v. Cinema Technologies, Inc., 152 F.3d
12 1161, 1164-65 (9th Cir. 1998) (quoting Universal Analytics v.
13 MacNeal-Schwendler Corp., 707 F. Supp. 1170, 1177 (C.D. Cal.
14 1989), aff'd, 914 F.2d 1256 (9th Cir. 1990)). As currently plead,
15 the allegations supporting the second counterclaim fail to
16 identify the alleged trade secrets with sufficient particularity.
17     Under California law, when information "is generally known in
18 the trade and already used by good faith competitors, it is not a
19 protectable trade secret and injunction should not issue." Am.
20 Paper & Packaging Prods., Inc. v. Kirgan, 183 Cal. App. 3d 1318,
21 1326 (1986). Thus, Defendants may not assert trade secret
22 protection for patented IKOR technology. See Henry Hope X-Ray
23 Prods., Inc. v. Marron Carrel, Inc., 674 F.2d 1336, 1342 (9th Cir.
24 1982) ("Matters disclosed in a patent publication destroy any
25 trade secret contained therein.") (applying Pennsylvania trade
26 secret law). Logtale argues that Defendants initially alleged a
27 counterclaim for patent infringement but abandoned that claim in
28 the amended answer and counterclaim, and may not revive the trade

secret claim as one for patent infringement. IKOR fails to address this argument or demonstrate that amendment would not be futile as to its published patents. The counterclaim for theft of IKOR patent rights is therefore dismissed without leave to amend. Because amendment may not be futile with respect to protectable trade secrets that are not in the public domain, the counterclaim is dismissed with leave to amend to allege that.

III. Interference with Prospective Business Opportunity

IKOR's fourth counterclaim for relief alleges interference with prospective business opportunity. Under California law, the elements of a tort claim for intentional interference with prospective economic advantage are (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153 (2003). To meet the third element, intentional acts, a plaintiff must plead intentional acts by the defendant that are wrongful apart from the interference itself, and are designed to disrupt the relationship. Id. at 1154. This requires a showing that the defendant "engaged in conduct that was wrongful by some legal measure other than the fact of interference itself" such as "conduct that is recognized as anticompetitive under established state and federal positive law." Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 393 (1995).

14

Case4:11-cv-05452-CW Document35 Filed12/05/12 Page15 of 18

1    The fourth counterclaim alleges that IKOR secured a contract
2 with the United States Army and with Northwestern University to
3 conduct research in the area of wound healing, and that Logtale
4 tried to interfere and obstruct IKOR's business.  1AA, Fourth
5 Counterclaim ¶ 39.  Logtale contends that the counterclaim for
6 intentional interference with prospective economic advantage fails
7 to allege that Logtale did anything to interfere with the Army
8 contract.  IKOR responds that Logtale and the third-party
9 defendants have obtained equipment subject to export controls by
10 misrepresenting to the United States Department of Commerce that
11 they have rights to distribute IKOR's biopharmaceuticals and have
12 thereby jeopardized IKOR's reputation as a defense contractor.
13 Because IKOR fails to allege actual disruption of a contractual
14 relationship or economic harm that is proximately caused by
15 Logtale, the claim for intentional interference with prospective
16 business opportunity with the Army and Northwestern University is
17 dismissed.  Leave to amend is granted only to cure the deficient
18 elements of the claim; IKOR may not amend the counterclaim to
19 assert new grounds for relief.

20    IKOR also contends that Logtale has withheld information
21 necessary for IKOR to meet the Food and Drug Administration's
22 strict requirements for reporting findings from clinical tests or
23 studies, and has precluded IKOR from making new drug applications
24 in the United States and in Europe.  1AA, Fourth Counterclaim
25 ¶¶ 40, 43; Opp. at 17.  These allegations fail to claim the
26 existence of an economic relationship between IKOR and a third
27 party, intentional acts by Logtale designed to disrupt that
28 relationship, actual disruption of the relationship, or economic

15

harm proximately caused by the intentional acts.  In response to the motion to dismiss, IKOR fails to address any of the specific elements of a claim for intentional interference of prospective business advantage.  Because amendment appears to be futile, this claim is dismissed with prejudice as to the allegations of interference with IKOR's new drug applications in the United States and in Europe.

IKOR also alleges that Logtale has obstructed its attempts to obtain additional financing for research to complete the testing necessary for new drug applications.  1AA, Fourth Counterclaim ¶ 39; Opp. at 18.  As currently plead, the counterclaim fails to identify a particular economic relationship between IKOR and some third party, which would probably provide future economic benefit to IKOR.  See Westside Center Associates v. Safeway Stores 23, Inc., 42 Cal. App. 4th 507, 522 (1996) ("The law precludes recovery for overly speculative expectancies by initially requiring proof the business relationship contained 'the probability of future economic benefit to the plaintiff.'")). IKOR suggests that Logtale and the third-party defendants have been attempting to "drive IKOR into bankruptcy or damage the company," but fails to plead intentional or unlawful acts designed to disrupt an economic relationship with some third party.  See LiMandri v. Judkins, 52 Cal. App. 4th 326, 340 (1997) ("'a plaintiff seeking to recover for an alleged interference with prospective contractual or economic relations must plead and prove as part of its case-in-chief that the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of

16

interference itself.'" (quoting <u>Della Penna v. Toyota Motor Sales, U.S.A.</u>, Inc., 11 Cal. 4th 376, 393 (1995)) (emphasis in original). The allegations also fail to demonstrate actual disruption of the relationship, or economic harm proximately caused by the intentional acts. Because amendment may not be futile, the claim is dismissed with leave to amend to cure these defects with respect to the alleged interference with IKOR's prospective financing.

IV. Counterclaim for Injunctive Relief

Logtale further seeks dismissal of IKOR's counterclaim for injunctive relief. IKOR has not alleged an independent counterclaim for injunctive relief.[1] Instead, it simply seeks equitable relief on its other counterclaims. Because those counterclaims are dismissed with leave to amend, Logtale's motion to dismiss the prayer for injunctive relief is granted with leave to re-allege it if any of the counterclaims are successfully amended.

V. Motion to Strike

Logtale moves to strike allegations that it contends are immaterial to the dispute. IKOR seeks leave to amend the allegations to demonstrate their relevance to the counterclaims, with the exception of the allegations related to the abandoned counterclaim for unfair competition, 1AA at 30:24-27. Because that counterclaim is dismissed, the motion to strike the allegation at page 30, paragraph 34, is denied as moot. Because

---

[1] IKOR alleges a third-party claim for injunctive relief, but the third-party complaint is not presently before the Court.

IKOR is granted leave to amend the counterclaims within the limited scope discussed above, Logtale's motion to strike is denied.

## CONCLUSION

For the foregoing reasons, Logtale's Motion to Dismiss the Counterclaims is GRANTED, WITH LEAVE TO AMEND as to the first, second and fourth counterclaims for relief. (Docket No. 27.) The motion to dismiss the third counterclaim for unfair competition is unopposed and granted with prejudice. Logtale's motion to dismiss the counterclaim for injunctive relief is GRANTED with leave to amend and its motion to strike is DENIED.

IKOR may file an amended counter-complaint within twenty-one days of the date of this order. Logtale must answer or otherwise respond to the amended counter-complaint twenty-one days thereafter. IKOR must also file proof of timely service of its third-party complaint upon third-party defendants Dr. Wai, New World Mobile, and A Innovation pursuant to Federal Rule of Civil Procedure 4(l) within three days of this Order.

The initial case management conference will be held on January 16, 2013. The parties must file a revised joint case management statement by January 9, 2013.

IT IS SO ORDERED.

Dated: 12/5/2012

CLAUDIA WILKEN
United States District Judge