United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LOGTALE, LTD.,

       Plaintiff,

  v.

IKOR, INC., et al.,

       Defendants.

_____/

No. C 11-5452 CW

ORDER GRANTING IN
PART AND DENYING
IN PART MOTION TO
DISMISS
COUNTERCLAIMS
(Docket No. 46)

Plaintiff and Counterdefendant Logtale, Ltd. moves to dismiss the counterclaims of Defendant and Counterclaimant IKOR, Inc. pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike portions of IKOR's counter-complaint pursuant to Rule 12(f). IKOR opposes the motion. After considering the parties' submissions, the Court finds the matter suitable for decision without oral argument and now grants the motion in part and denies it in part.

BACKGROUND

The following facts are admitted or alleged in Defendants' second amended answer and counterclaims (2AA).

IKOR is a South Dakota corporation that develops bovine-derived oxygen therapeutics and related technologies. Docket No. 45, 2AA ¶ 4. On October 20, 2006, Logtale purchased nearly two million shares of preferred stock in IKOR for just over five million dollars. Id. ¶ 17. As a result, Logtale became IKOR's majority shareholder. Id. ¶ 19.

That same day, Logtale elected Dr. Norman Wai to serve as a director on IKOR's board. Id. It also entered into two separate agreements with IKOR. Id. The first was an Investors' Rights

**United States District Court**
For the Northern District of California

Agreement, which outlined Logtale's rights as a shareholder.  Id. ¶¶ 18-20.  IKOR initially negotiated the Investors' Rights Agreement with New World Mobile Holdings Ltd., a company incorporated in the Cayman Islands as a subsidiary of the Hong Kong-based corporation, New World Development Company Limited. Id. ¶ 20.  Late in the negotiations, however, New World Mobile asked to substitute Logtale, its alter ego, as the investor.  Id. ¶ 11.  At the time of the agreement, Logtale was a "shelf-corporation" registered in the British Virgin Islands with no operational existence or significant capital.  Id. ¶ 20.  New World Mobile explained that Logtale's substitution was necessary because the proposed investment in IKOR would cause disclosure difficulties for New World Mobile and New World Development.  Id.

The other agreement that the parties reached that day was a License and Manufacturing Agreement (LMA).  Id., First Counterclaim ¶ 1, Ex. A.  According to IKOR, the LMA granted Logtale a limited exclusive right to manufacture, sell, and distribute certain IKOR biopharmaceutical products in designated territories within Asia, Australia, and New Zealand.  Id. Although the parties later sought to enter into a more complete licensing agreement, they never ultimately executed one because their lawyers "could not agree on the final language contained within the drafts of a more lengthy proposed agreement."  Id. ¶ 2. Nevertheless, IKOR alleges, despite their failure to execute a more complete agreement, the parties continued to operate under terms of the 2006 LMA.  Id.  IKOR contends that this unwritten "understanding was manifested in a substantial transfer of technology and know-how" from IKOR to Logtale through New A

2

**United States District Court**
For the Northern District of California

Innovation (NEWAI), a corporation created by Logtale to market

IKOR's products.  IKOR further contends that this understanding

was memorialized in "subsequent communications between the

parties," such as an e-mail that Dr. Wai sent on Logtale's behalf

to another IKOR director in August 2009.[1]  Id.  In that e-mail,

Dr. Wai states,

> I had confirmed to you and would confirm again that
> Logtale/NEWAI had always respected IKOR's rights under
> the "License and Manufacturing Agreement" ("LMA"), which
> for the time being are the terms set out in the Schedule
> to the Option Agreement dated 20th October 2006 (the
> "Option Agreement").  Logtale/NEWAI will continue to
> respect and abide by the terms of the LMA and any and
> all agreements entered into between IKOR and
> Logtale/NEWAI and in particular IKOR's exclusive
> marketing right to Europe and U.S.A.

Id.

In 2010, IKOR canceled Logtale's marketing and distribution

licenses because Logtale had allegedly breached the LMA.  Id.

¶ 12.  In particular, IKOR alleges that Logtale -- acting through

NEWAI, New World Mobile, and New World Development -- withheld

royalties, failed to comply with the LMA's auditing and inspection

requirements, misused IKOR's proprietary information, and sought

to market IKOR's pharmaceutical products outside of the

territories designated for Logtale in the LMA.  Id. ¶¶ 9-11, 14.

Logtale commenced this action in November 2011 and filed its

1AC in February 2012.  It asserts claims against IKOR and two of

IKOR's officers and directors, James Canton and Ross Tye, for

---

[1] Because IKOR relies on this e-mail in its pleading, the Court
grants Logtale's request to take judicial notice of this e-mail.  See
Sams v. Yahoo! Inc., 713 F.3d 1175, 1179 (9th Cir. 2013) (holding that,
when considering a motion to dismiss under Rule 12(b)(6), courts "are
permitted to consider documents that were not physically attached to the
complaint where the documents' authenticity is not contested, and the
plaintiff's complaint necessarily relies on them").

breach of the Investors' Rights Agreement, breach of fiduciary duties, and breach of the implied covenant of good faith and fair dealing.

IKOR, Canton, and Tye filed their initial answer and counterclaims to the 1AC in March 2012 along with a third-party complaint against Wai, NEWAI, New World Mobile, and Gerald To, the managing director of New World Mobile and a shareholder in Logtale.  In May 2012, they filed their amended answer and counter-complaint, which the Court dismissed in December 2012 with leave to amend.  Docket No. 35.

Defendants filed their 2AA in January 2013.  In it, IKOR charges Logtale with breach of contract, violations of California's Uniform Trade Secrets Act (UTSA), and interference with prospective business opportunities.  2AA, First, Second, and Third Counterclaims ¶¶ 1-34.  IKOR also reasserts its third-party claims against Wai, NEWAI, New World Mobile, and To.  Id., Third-Party Complaint ¶¶ 1-37.  To date, none of the Third-Party Defendants has been served.

LEGAL STANDARD

I.   Motion to Dismiss

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all

material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint."  Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

II.  Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), the court may strike from a pleading "any redundant, immaterial, impertinent or scandalous matter."  The purpose of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues. Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994).  Matter is immaterial if it has no essential or important relationship to the claim for relief plead.  Id.  Matter is impertinent if it does not pertain and is not necessary to the issues in question in the case.  Id. "Superfluous historical allegations are a proper subject of a

motion to strike." Id.  Motions to strike are disfavored because

they are often used as delaying tactics and because of the limited

importance of pleadings in federal practice.  Bureerong v. Uvawas,

922 F. Supp. 1450, 1478 (C.D. Cal. 1996).  They should not be

granted unless it is clear that the matter to be stricken could

have no possible bearing on the subject matter of the litigation.

Colaprico v. Sun Microsystems, Inc., 758 F. Supp. 1335, 1339 (N.D.

Cal. 1991).

DISCUSSION

I.   Motion to Dismiss Counterclaims

     A.   Breach of Contract (First Counterclaim)

     IKOR alleges that Logtale breached the LMA.  Logtale contends

that the LMA is not an enforceable contract because the parties

never finalized its terms and failed to enter into a subsequent

licensing agreement.

     As the Court noted in its prior order dismissing IKOR's

counterclaims, the LMA did not, on its face, constitute a final

agreement.  The signed Option Agreement attached to the LMA makes

clear that the parties expected to engage in further negotiations

before finalizing their licensing agreement.  One provision of

that agreement, for instance, states:

> Immediately after the service of the Option Notice, the
> Company [i.e., IKOR] and the Grantee [i.e., Logtale]
> shall negotiate diligently and in good faith, and use
> their best efforts to enter into the License and
> Manufacturing Agreement on the principal terms and
> conditions set out in the Schedule attached hereto
> within thirty (30) days after such service.

2AA, Ex. A at 1 (emphasis added).  By granting Logtale the option

to negotiate a licensing contract, this provision demonstrates

that the LMA was not, by its own terms, a binding agreement.  See

United States District Court
For the Northern District of California

  
**United States District Court**
For the Northern District of California

Beck v. American Health Group Intl., Inc., 211 Cal. App. 3d 1555, 1562 (1989) ("Preliminary negotiations or an agreement for future negotiations are not the functional equivalent of a valid, subsisting agreement." (citations and quotation marks omitted)).

Despite the lack of a final written agreement, however, IKOR contends that the parties' actions manifested an unwritten agreement because they effectively operated under the terms of the LMA from 2006 until 2010. IKOR points to Wai's August 2009 e-mail as evidence of Logtale's assent to the LMA. 2AA, First Counterclaim ¶ 2. IKOR also alleges that it transferred substantial "technology and know-how" to NEWAI under the agreement. Id.

Of these two allegations, only the August 2009 e-mail offers a sufficient factual basis for IKOR's contract claim. IKOR's assertion that it shared unidentified "technology and know-how" with NEWAI does not suggest that Logtale (or any of its affiliated entities) intended to be bound by the LMA. IKOR has not specified whether the technology it transferred to NEWAI was the same technology described in the 2006 LMA. More importantly, IKOR has not alleged that it received anything in return for the technology it shared with Logtale. Thus, this allegation does not support IKOR's contention that both parties were operating under the terms of the LMA.

In contrast, Wai's August 2009 e-mail contains sufficient factual details to suggest that Logtale may have assented to the LMA's terms. Wai relies on the LMA at several points in his e-mail and repeatedly uses language suggesting that the LMA may be binding. For instance, in the e-mail's second paragraph, he

states that "Logtale/NEWAI will continue to respect and abide by the terms of the LMA and any and all agreements entered into between IKOR and Logtale/NEWAI."  Ladine Decl., Ex. A, at 1 (emphasis added).  A few paragraphs later, while describing Logtale's efforts to obtain regulatory approval for a certain drug, Wai states, "I believe Logtale/NEWAI is obliged and entitled to do [this] under the terms of the LMA."  Id. at 2 (emphasis added).  He also notes that "Logtale/NEWAI is no doubt authorized to do [this] under the LMA."  Id. at 3 (emphasis added).  Taken together, this language supports IKOR's claim that the parties understood themselves to be bound by the LMA.  Although the e-mail may not be conclusive proof of this understanding, it provides a plausible basis for IKOR's theory of liability and, as such, is sufficient to state a claim for breach of contract.

Logtale points out that Wai expressly describes his e-mail as "non-binding" and "without prejudice."  Id. at 1.  These terms, however, refer to the e-mail itself and not to the LMA.  See id. ("[Y]ou should treat the contents of this letter as entirely 'without prejudice'" . . . (emphasis added)).  Even if Wai's e-mail contained other language contemplating further negotiations of the parties' licensing arrangement, that language would merely raise a dispute of fact as to the parties' intentions.  See Banner Entertainment, Inc. v. Superior Court, 62 Cal. App. 4th 348, 358 (1998) ("Whether it was the parties' mutual intention that their oral agreement to the terms contained in a proposed written agreement should be binding immediately is to be determined from the surrounding facts and circumstances of a particular case and is a question of fact for the trial court."); Sparks v. Vista Del

United States District Court
For the Northern District of California

<u>Mar Child & Family Servs.</u>, 207 Cal. App. 4th 1511, 1519 (2012) ("Where the existence of a contract is at issue and the evidence is conflicting or <u>admits of more than one inference</u>, it is for the trier of fact to determine whether the contract actually existed." (citations and quotation marks omitted; emphasis added).  Such disputes may not be resolved on a motion to dismiss.  Accordingly, because the August 2009 e-mail can plausibly be read as evidence of a binding licensing contract between the parties, IKOR has plead sufficient facts to state a contract claim.

   B.   Theft of Intellectual Property (Second Counterclaim)

   As an alternative to its contract claim, IKOR asserts a misappropriation claim under UTSA.  It asserts, "In the event that the Court finds that there is no enforceable agreement between the parties, then Logtale/NEWAI has misappropriated trade secrets from IKOR."  2AA, Second Counterclaim ¶ 19.  In particular, IKOR alleges that it granted Logtale and NEWAI remote internet access to "all of IKOR's proprietary manufacturing[] and production information -- basically how one makes IKOR's drug."  2AA, Second Counterclaim ¶ 21.  IKOR contends that Logtale and NEWAI not only failed to compensate it for this information but also used the information "to gain approvals from the drug authorities in Hong Kong and the EMEA, Europe and SFDA, China."  <u>Id.</u> ¶ 22.[2]

   To state a claim for misappropriation of trade secrets under UTSA, a plaintiff must allege that the defendant (1) "disclose[d] or use[d] the trade secret of another without express or implied consent" and (2) "at the time of the disclosure or use, [the

---

   [2] IKOR's pleading does not identify what agencies or organizations are represented by the acronyms "EMEA" and "SFDA."

defendant] knew or had reason to know that its knowledge of the trade secret was derived from a person who owed a duty to the entity seeking relief to maintain the trade secret's secrecy or limit its use." Bayer Corp. v. Roche Molecular Sys., Inc., 72 F. Supp. 2d 1111, 1117 (N.D. Cal. 1999) (citing Cal. Civ. Code § 3426.1(b)(2)(B)). "The plaintiff 'should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.'" Imax Corp. v. Cinema Technologies, Inc., 152 F.3d 1161, 1164-65 (9th Cir. 1998) (quoting Universal Analytics v. MacNeal-Schwendler Corp., 707 F. Supp. 1170, 1177 (C.D. Cal. 1989), aff'd, 914 F.2d 1256 (9th Cir. 1990)).

Here, IKOR has not identified its trade secrets with sufficient particularity to state a claim under UTSA. The UTSA defines a trade secret as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d). Although IKOR alleges that it shared numerous manufacturing, packaging, and marketing "protocols" with Logtale and NEWAI, it fails to explain which of these protocols, if any, are proprietary and actually pertain to its own pharmaceutical products. Indeed, of all the supposed trade secrets listed in IKOR's counter-complaint, only one relates to a

United States District Court
For the Northern District of California

specific IKOR drug -- namely, "clinical data for animal trials relating to IKOR 2084."  2AA, Second Counterclaim ¶ 23a.[3]  The rest of the items on the list -- including market research, manufacturing protocols, and packaging procedures -- fail to identify IKOR's specific ownership interest in the information.  The Court previously dismissed IKOR's misappropriation claim for a similar failure to identify its trade secrets with sufficient particularity.  See Docket No. 35, Order Dismissing Counterclaims, at 12-13 ("IKOR also refers to an application by third-party defendant New A Innovation for approval to market an IKOR drug in Europe after IKOR terminated the [LMA] with Logtale, but does not sufficiently identify the drug or IKOR's ownership interest in it.").

Even setting aside this deficiency, IKOR's misappropriation claim fails because it has not alleged sufficient facts to show that Logtale or NEWAI used any of its proprietary information without its "express or implied consent."  Bayer Corp., 72 F. Supp. 2d at 1117.  In its counter-complaint, IKOR asserts that it granted Logtale and NEWAI "remote access" to its proprietary information pursuant to the LMA and that Logtale misappropriated the information by refusing to compensate IKOR in return.  2AA, Second Counterclaim ¶ 21.  The problem with this theory, however, is that IKOR has expressly plead its misappropriation claim as an alternative to its contract claim: as discussed above, IKOR is only pursuing a misappropriation claim to the extent that "the

---

[3] IKOR's Second Counterclaim includes two paragraphs numbered 23. To avoid confusion, this order refers to the first of these paragraphs as "23a" and the second as "23b."

United States District Court
For the Northern District of California

Court finds that there is no enforceable agreement between the parties." Id. ¶ 19.  But if there was "no enforceable contract between the parties," then Logtale was never required to compensate IKOR for its information or to keep IKOR's information confidential.  In short, IKOR's misappropriation claim depends on the existence of a binding contract between the parties.  In the absence of such a contract, IKOR simply granted Logtale and NEWAI access to its information voluntarily -- without any reciprocal promise of compensation or confidentiality.

Thus, IKOR has failed to state a valid claim for misappropriation of trade secrets.  Because IKOR has alleged that it voluntarily granted Logtale or NEWAI access to its proprietary information, leave to amend would be futile.  This claim is therefore dismissed with prejudice.

C.   Interference with Prospective Business Opportunity
     (Third Counterclaim)

IKOR alleges that Logtale and NEWAI deliberately sought to hinder its efforts to obtain financing from foreign investors. Specifically, IKOR contends that NEWAI applied for "approval in the European market for what was essentially IKOR's drug" in order to "cloud and counteract IKOR's own representation to its prospective investors that it had exclusive rights to this market." Id., Third Counterclaim ¶ 30.  IKOR contends that NEWAI's actions ultimately "discourage[d] these investors from

making any investment in IKOR" and, therefore, constitute unlawful interference with a prospective business opportunity.[4]  Id.

To state a claim for claim for intentional interference with prospective economic advantage, the plaintiff must allege (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.  Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153 (2003).  California courts have consistently held that, to satisfy the first element of this claim, the plaintiff must identify a specific business relationship that the defendant disrupted.  See Westside Center Associates v. Safeway Stores 23, Inc., 42 Cal. App. 4th 507, 522 (1996) ("The law precludes recovery for overly speculative expectancies by initially requiring proof the business relationship contained 'the probability of future economic benefit to the plaintiff.'")); Roth v. Rhodes, 25 Cal. App. 4th 530, 546 (1994) ("[A]n essential element of the tort of intentional interference with prospective business advantage is the existence of a business relationship with which the tortfeasor interfered.  Although this need not be a

---

[4] IKOR also alleges that "Logtale/NEWAI intentionally withheld information that it was required to provide so as to preclude IKOR from making new drug applications in both the United States and the European markets and thereby disrupt the acquisition of new financing by IKOR." 2AA, Third Counterclaim ¶ 33.  IKOR does not appear to rely on this allegation in its opposition and the Court has already held that Logtale's alleged withholding of information from IKOR does not provide a basis for a tortious interference claim.  See Docket No. 35, at 15-16.

contractual relationship, an existing relationship is required."
(citations omitted)).

IKOR has failed to satisfy this requirement.  Although its
counter-complaint identifies the consultant it hired to search for
potential investors, it does not identify a single investor who
actually planned to do business with IKOR.  Silicon Labs
Integration, Inc. v. Melman, 2010 WL 890140 (N.D. Cal.) ("To the
extent plaintiff alleges interference with hypothetical,
'potential,' or 'prospective' relationships, the claim is not
cognizable under California law." (citations omitted)).  IKOR's
allusions to unnamed investors are not sufficient to state a
claim.  Cf. Janda v. Madera Cmty. Hosp., 16 F. Supp. 2d 1181, 1189
(E.D. Cal. 1998) (dismissing tortious interference claim where the
plaintiff, a physician, alleged an "economic relationship with his
existing patients and potential patients" but failed to "specify
the identities of the alleged patients").

Even if IKOR had identified specific investors, it has not
alleged sufficient facts to show that NEWAI's conduct "actually
disrupted" IKOR's relationship with those investors.  Its counter-
complaint does not identify the name of the drug for which NEWAI
sought approval, the governmental body or agency to which NEWAI
applied, when NEWAI submitted its application, or whether NEWAI's
application was even public.  Without this information, it is
impossible to determine whether NEWAI's application would have
plausibly had any effect on IKOR's potential investors.

IKOR has thus failed to state a claim for tortious
interference with prospective business opportunity.  Because IKOR

United States District Court
For the Northern District of California

1  has already amended this claim twice without curing its
2  deficiencies, the Court now dismisses this claim with prejudice.
3  II.  Motion to Dismiss Third Party Complaint
4      IKOR filed its initial third-party complaint in March 2012
5  but has yet to file proof of service on Third-Party Defendants,
6  all of whom reside in Hong Kong.  Logtale moves to dismiss the
7  third-party complaint, citing IKOR's failure to complete service.
8      Rule 4(m) imposes a 120-day time limit on domestic service
9  but does not set a time limit for completing service on a
10 defendant who resides outside of the United States.  See Lucas v.
11 Natoli, 936 F.2d 432 (9th Cir. 1991).  While other circuits have
12 held that "the amount of time allowed for foreign service is not
13 unlimited," Nylok Corp. v. Fastener World Inc., 396 F.3d 805, 807
14 (7th Cir. 2005); see also Feliz v. MacNeill, 493 Fed. App'x 128,
15 131 (1st Cir. 2012) ("[C]ourts have leave to dismiss for failure
16 to serve abroad when a plaintiff is dilatory."), the Ninth Circuit
17 has never specifically imposed any time limit on serving a foreign
18 defendant.
19     Here, IKOR has spent nearly a year attempting to serve its
20 third-party complaint on Wai, NEWAI, New World Mobile, and To.  A
21 summons for these Third-Party Defendants was issued in August 2012
22 and the Court set an initial deadline of December 8, 2012 for IKOR
23 to serve them.  After IKOR represented that its process server
24 needed until the end of December 2012 to complete service, the
25 Court extended IKOR's deadline to January 7, 2013.  Docket No. 37.
26 IKOR has not filed any requests for further extensions of time
27 since then.
28

United States District Court
For the Northern District of California

Although IKOR's eleven-month delay in serving Third-Party Defendants is significant -- as is IKOR's failure to keep the Court apprised of the reasons for the delay -- dismissal is not warranted at this time.  There is no evidence that IKOR's failure to complete service has been deliberate and, as noted above, the Ninth Circuit has not imposed a time limit on foreign service. Furthermore, Logtale will not be prejudiced by allowing IKOR to continue its efforts to complete service.  Accordingly, Logtale's motion to dismiss the third-party complaint is denied.

III. Motion to Strike

Logtale moves to strike two statements from IKOR's Second Counterclaim for misappropriation of trade secrets.  First, it seeks to strike five sentences describing the various ways that Logtale allegedly breached the LMA.  2AA, Second Counterclaim ¶ 19.  Second, it seeks to strike a sentence alleging that Logtale made misrepresentations to the federal government in order to acquire equipment that was "previously used for chemical and biological warfare."  Id. ¶ 23.

The first of these statements is directly relevant to IKOR's breach of contract claim and, therefore, should not be stricken. Colaprico, 758 F. Supp. at 1339 ("[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.").  Even if IKOR's misappropriation claim is dismissed, its allegations about Logtale's breach of the LMA still support its surviving contract claim.

In contrast, IKOR's second statement, alleging that Logtale made false statements to the federal government, has no bearing on

United States District Court
For the Northern District of California

IKOR's contract claim nor any other subject in this litigation.
Moreover, IKOR's allegation that Logtale made these false
statements in order to acquire equipment previously used for
warfare is both "impertinent" and "scandalous."  Fed. R. Civ. P.
12(f).  Accordingly, Logtale's motion to strike this statement is
granted.

CONCLUSION

For the reasons set forth above, Logtale's motion to dismiss
and motion to strike (Docket No. 46) is GRANTED in part and DENIED
in part.  IKOR's Second and Third Counterclaims are dismissed with
prejudice.  In addition, the following sentence is stricken from
IKOR's counter-complaint: "Logtale/NEWAI (New Zealand) has made
false and misleading statements to the U.S. Department of Commerce
in order to acquire certain equipment that was under export
controls and that was previously used for chemical and biological
warfare."  2AA, Second Counterclaim ¶ 23.

A case management conference will be held at 2:00 p.m. on
Wednesday, September 4, 2013 in Courtroom 2 at 1301 Clay Street,
Oakland, California.  The parties must submit a joint case
management statement in advance of the conference pursuant to
Civil Local Rule 16-9.  In the case management statement, IKOR
must provide a detailed description of its efforts to complete
service on Third-Party Defendants since January 2013.  Logtale's
motion for a status conference (Docket No. 60) is DENIED as moot.

IT IS SO ORDERED.

Dated:  8/14/2013

CLAUDIA WILKEN
United States District Judge

17