**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LOGTALE, LTD.,

            Plaintiff,

  v.

IKOR, INC.  et al.,

            Defendants.

_____/

No. C -11-05452 (EDL)

**ORDER DENYING DEFENDANTS'
MOTION TO AMEND
COUNTERCLAIMS**

      Before the Court is Defendants' motion to amend its second amended answer and counterclaims ("SAA").  Defendants seek leave to: (1) amend their breach of contract counterclaim; (2) add what appears to be a new cause of action; (3) add a new prayer for relief; (4) add two new affirmative defenses; (5) voluntarily dismiss their third party complaint; and (6) set discovery and trial dates.  The Court previously dismissed the third party complaint pursuant to the parties' stipulation at a case management conference.  For the reasons set forth below, the Court denies Defendants' motion to amend.

**I.      Background**

      **A.      Case Overview**

      On January 8, 2013, the District Court referred all further proceedings in this case, including trial, to this Court.  (Dkt. 90.)  The Court held a case management conference on January 28, 2014 and dismissed Defendant's third party complaint pursuant to the parties' stipulation and ordered the parties to submit a proposed schedule by February 11, 2014.  The Court adopted the parties' proposed schedule on February 19, 2014.  (Dkt. 109.)  Under this schedule, fact discovery closes on August 1, 2014.  (Id.)  Defendants filed a motion to amend its counterclaims on January 27, 2014. The Court held a hearing on this motion on March 4, 2014.

**United States District Court**
For the Northern District of California

1  B. <u>Plaintiff's Allegations and Claims</u>

2  Plaintiff Logtale, Inc. is a British Virgins Island company with its principal place of business

3  in Hong Kong.  (First Amended Comp. ("FAC") ¶ 2.)  It is a holding company that owns a 50%

4  interest in New A Innovation Limited ("NEWAI"), a Hong Kong company that researches and

5  develops biopharmaceutical products before they are patented or registered for marketing or sale.

6  (FAC ¶¶ 2-3.)  Defendant IKOR, Inc. is a South Dakota corporation in the business of developing

7  bovine-derived oxygen therapeutics and related technologies.  Defendants Canton and Tye are

8  officers and directors of IKOR.  (FAC ¶¶ 5-6.)  IKOR owns three patents related to tetrameric

9  hemoglobin.  (FAC ¶ 15.)  In October 2006, Plaintiff purchased 1,999,840 shares of IKOR stock for

10  approximately $5 million and became IKOR's majority shareholder pursuant to a Series A Stock

11  Purchase Agreement and an Investors' Rights Agreement.  (FAC ¶¶ 17, 20.)

12  Plaintiff's first amended complaint ("FAC") alleges claims for injunction against

13  unauthorized corporate acts, breach of contract, breach of fiduciary duties, and breach of the implied

14  covenant of good faith and fair dealing against Defendants.  Plaintiff seeks to enjoin IKOR from

15  conducting a reverse merger and from changing the number and composition of the IKOR board

16  without Plaintiff's consent, such consent being required by IKOR's articles of incorporation.  (FAC

17  ¶¶ 68-73; Jt. Case Mgmt. Stat. at 7-8, Dkt. 73.)  Plaintiff alleges that Defendants breached the

18  Investors' Rights Agreement by failing to provide audit disclosures or to honor Plaintiff's right of

19  first refusal for the issuance of additional shares of IKOR.  (FAC ¶¶ 74-83, Jt. Case Mgmt. Stat. at 8,

20  Dkt. 73.)  Plaintiff alleges breach of fiduciary duty on the grounds that, among other things,

21  Defendants Canton and Tye failed to discharge their duties and acted inappropriately by issuing

22  shares of IKOR stock to Beeftech, LLC (a company owned and managed by Canton and Tye) and by

23  selling company assets to Oxenox, LLC, another company owned and managed by Tye.  (FAC ¶¶

24  25-37, 56-59, 84-96; Jt. Case Mgmt. Stat. at 8.)  Plaintiff alleges that IKOR breached the implied

25  covenant of good faith and fair dealing by, among other things, failing to honor Plaintiff's notice of

26  election to redeem most of its shares of preferred stock, removing a board member, and assigning

27  certain IKOR patent rights and technology without notifying Plaintiff or obtaining Plaintiff's

28  consent.  (FAC ¶¶ 97-104.)  In its proposed second amended complaint, filed February 27, 2014,

United States District Court
For the Northern District of California

1    Plaintiff alleges that seven additional defendants are liable, including Beeftech and Oxenox.

2        C.    Defendants' Allegations and Counterclaims

3            1.    *Answer and Counterclaim*

4        On March 23, 2012, Defendants answered the FAC and alleged four counterclaims against

5    Plaintiff: breach of licensing agreement, patent infringement, theft of intellectual property, and

6    interference with prospective business opportunity.  (Dkt. 21.)  Defendants alleged that on the same

7    day that Plaintiff bought IKOR's stock and entered into the Investor's Rights Agreement, Plaintiff

8    and IKOR entered into an "Option and Licensing and Manufacturing Agreement."  (Ans. at

9    Counterclaim ("Cntcl.") ¶ 1.)  The Option Agreement is a signed agreement between Plaintiff and

10   IKOR.  (Ans. Ex. A.)  The Licensing Agreement is an unsigned term sheet appended to the Option

11   Agreement.  (Id.)  Defendants alleged that under that the Licensing Agreement, Plaintiff had a

12   limited, exclusive right to sell certain IKOR biopharmaceuticals in designated areas, namely Asia

13   and Australia and New Zealand.  (Id.)  Defendants alleged that "[a]lthough a more complete

14   agreement was initially contemplated, it was never executed, and thus both IKOR and Logtale have

15   been operating under the terms of the Licensing Agreement attached as Exhibit A since 2006."  (Id.)

16   According to Defendants, the Licensing Agreement licensed to Plaintiff "Oxygen Therapeutics and

17   related Hemoglobin-based biopharmaceuticals."  (Id.  ¶ 3.)  Defendants alleged that Plaintiff

18   breached the Licensing Agreement by manufacturing and selling licensed product without paying

19   royalties or providing an accounting, refusing IKOR's demands to inspect Plaintiff's facilities,

20   failing to provide required disclosures, and refusing to clarify its intentions about selling IKOR

21   products in non-designated territories.  Defendants alleged that IKOR cancelled Plaintiff's licenses

22   in 2010.  (Id. ¶ 7.)

23       Defendants alleged "patent infringement" because Plaintiff allegedly "attempt[ed] to make

24   changes to the IKOR intellectual property, so as to circumvent the Licensing Agreement between the

25   parties."  (Id. ¶ 12.)  Defendants' purported patent infringement counterclaim did not allege that

26   Plaintiff infringed any particular patent but rather alleged that Defendant created a knock-off drug

27   and misrepresented its rights to manufacture this drug to, among others, the FDA and the European

28   Medicines Agency ("EMA").  (Id. ¶ 11.)  Defendants further alleged that Plaintiff informed IKOR in

3

board meeting minutes that NEWAI intended to "file for a drug called OC99 in the [EMA]." (Id. ¶ 14.) Defendants' theft of intellectual property claim was based on Plaintiff conspiring with the Chinese Government to acquire IKOR's trade secrets and patents to formulate copycat drugs. (Id. ¶¶ 17-18.) Plaintiff allegedly interfered with IKOR's prospective business opportunities by withholding vital information on research, clinical trials, and regulatory meetings. (Id. ¶ 24.)

2. *First Amended Answer and Counterclaim and Motion to Dismiss*

Defendants filed a first amended answer, counterclaims, and third party complaint ("FAA") on May 21, 2012. Defendants dropped the patent infringement claim and added an unfair competition claim. (FAA Cntrcl. ¶ 25.) The unfair competition claim made many of the same allegations as the patent infringement claim, namely, that Plaintiff could not make arbitrary changes to active pharmaceutical ingredients in licensed products, fail to disclose those changes to IKOR, and attempt to make changes to the IKOR intellectual property in an effort to avoid the Licensing Agreement. (FAA Cntrcl. ¶ 28.) Defendants again alleged that Plaintiff used its technology to create a knock-off drug for which Plaintiff was trying to obtain regulatory approval. (Id. ¶¶ 27, 30.) As to the breach of contract counterclaim, Defendants alleged that according to the Licensing Agreement, "it was expected that [Plaintiff] and/or its related entities would invest at least $10 million on manufacturing facilities and efforts to obtain regulatory and governmental approvals." (Id. ¶ 2.) The FAA also added definitions of "IKOR Patent Rights" and "IKOR Know-How" from the Licensing Agreement to the breach of contract counterclaim. (Id. ¶¶ 5-6.) According to the breach of contract counterclaim in the FAA, Plaintiff "interfered with IKOR's licensing, marketing, and manufacturing agreements" by:

a.    Withholding royalties on sales due IKOR;

b.    Refusing to comply with IKOR's auditing agreements for its licensees, manufacturers, and marketers;

c.    Misused proprietary information of IKOR against it;

d.    Misled IKOR by misrepresentation of licensees' intent and progress;
e.    Failed to provide full disclosure of conflicts of interest;

f.    Failed to provide the IKOR with mandated information required under IKOR's agreements; and

g.    Exposing IKOR to potential adverse private and governmental actions.

4

United States District Court
For the Northern District of California

1   (Id. ¶ 14.)

2          Plaintiff moved to dismiss Defendants' counterclaims and strike certain allegations, and the

3   District Court granted in part and denied in part the motion.  With respect to the breach of contract

4   claim, Plaintiff argued that Defendants failed to allege the existence of a valid Licensing Agreement.

5   (Dkt. 65 at 7.)  The District Court agreed: "As currently plead, the allegations are not sufficient to

6   state a claim for breach of contract, but IKOR is granted leave to amend the allegations" to add facts

7   evidencing a valid agreement.  (Id.)

8          The District Court also dismissed Defendants' theft of intellectual property claim, brought

9   under the California version of the Uniform Trade Secrets Act.  (Id. at 11.)  The court found that

10  Defendants failed to identify the alleged trade secrets with particularity and dismissed that aspect of

11  the claim with leave to amend.  (Id. at 13-14.)  The District Court further found that Defendants

12  could not assert trade secret protection for patented IKOR technology and dismissed that aspect of

13  the claim with prejudice.  (Id.)  The District Court dismissed some aspects of the interference with

14  prospective business opportunity claim with prejudice and some without prejudice.  (Id. at 13-16.)

15  The District Court dismissed the unfair competition claim with prejudice as Defendants did not

16  oppose dismissal.  Finally, the Court dismissed Defendants' prayer for injunctive relief with leave to

17  reallege it if any of the counterclaims were successfully amended and denied Plaintiff's motion to

18  strike as moot.  (Id. at 17.)

19          3.     Second Amended Answer and Counterclaim and Motion to Dismiss

20          Defendants filed a second amended answer, counterclaims, and third party complaint

21  ("SAA") on January 2, 2013, alleging breach of Licensing Agreement, theft of intellectual property,

22  and interference with prospective business opportunity.  (Dkt. 45.)  With respect to the breach of

23  contract counterclaim, the SAA alleged that the two principals for Plaintiff and IKOR "agreed that

24  the technology transfer and licensing, manufacturing, and distribution would be governed by the

25  terms of the initial agreement, that is, Exhibit A."  (SAA Cntrcl. ¶ 2.)  According to Defendants, this

26  understanding was manifested in: (1) a substantial transfer of technology and know-how; and (2)

27  subsequent communications between the parties.  (Id.)  As an example, Defendants quoted an email

28  from Plaintiff's principal:

5

1         I had confirmed to you and would confirm again that Logtale/NEWAI had always
respected IKOR's rights under the "License and Manufacturing Agreement"

2   ("LMA"), which for the time being are the terms set out in the Schedule to the Option
Agreement dated 20th October 2006 (the "Option Agreement"). Logtale/NEWAI

3   will continue to respect and abide by the terms of the LMA and any and all
agreements entered into between IKOR and Logtale/NEWAI and in particular

4   IKOR's exclusive marketing right to Europe and U.S.A.

5   (Id.) As in the FAA, Defendants alleged in the SAA several ways in which Plaintiff allegedly

6   breached the licensing agreement, including "misu[ing] proprietary information of IKOR against it."

7   (SAA ¶ 16c.) The SAA also contained additional allegations regarding Defendants' alleged trade

8   secrets and Plaintiff's interference with prospective business opportunities. As in the other

9   counterclaims, Defendants alleged that Plaintiff/NEWAI sought "approval in the European market

10  for what was essentially IKOR's drug." (Id. ¶ 30.)

11        Plaintiff moved to dismiss the counterclaims in the SAA and to strike certain allegations.

12  The District Court granted in part and denied in part the motion on August 14, 2013. (Dkt. 66.)

13  Once again, Plaintiff alleged that the Licensing Agreement was not an enforceable contract because

14  the parties never finalized its terms and failed to enter into a subsequent licensing agreement. (Id. at

15  6.) The District Court rejected this argument. The District Court reiterated that the Licensing

16  Agreement did not on its face constitute a final agreement. (Id.) The District Court also found that

17  Defendants' allegation that the Licensing Agreement was evidenced by the transfer of technology

18  and know-how from IKOR to Plaintiff did not suggest that both parties were operating under the

19  terms of the Licensing Agreement. (Id. at 7.) The District Court concluded, however, that the email

20  "contain[ed] sufficient factual details to suggest that [Plaintiff] may have assented to the [Licensing

21  Agreement's] terms." (Id.) Although the email was not conclusive proof of a binding agreement, "it

22  provide[d] a plausible basis for IKOR's theory of liability and, as such, is sufficient to state a claim

23  for breach of contract." (Id. at 8.)

24        The District Court dismissed Defendants' theft of intellectual property claim, which it

25  characterized as a misappropriation of trade secrets claim, with prejudice. (Id. at 9.) The District

26  Court once again found that Defendants did not identify any trade secrets with sufficient

27  particularity. (Id. at 10.) The District Court also found that Defendants did not allege that Plaintiff

28  used IKOR's proprietary information without its express or implied consent. (Id. at 11.) The

United States District Court
For the Northern District of California

1   District Court noted that Defendants' misappropriation claim was based on Plaintiff failing to

2   compensate IKOR for proprietary information that IKOR provided to it.  Because Defendants' claim

3   was pled in the alternative to the breach of contract, claim, however, the claim assumed that there

4   was no enforceable Licensing Agreement.  The District Court reasoned that "[b]ut if there was 'no

5   enforceable contract between the parties,' then [Plaintiff] was never required to compensate IKOR

6   for its information or to keep IKOR's information confidential." (Id. at 12.)  The Court also

7   dismissed Defendants' claim for interference with prospective business opportunity with prejudice.

8         D.     <u>Hearing and Joint Letter</u>

9         At the March 4, 2014, hearing on Defendants' motion to amend, Defendants explained that

10  they were not arguing that Plaintiff breached the Licensing Agreement by patenting and

11  trademarking Defendants' IKOR 2084 drug per se.  Rather, Defendants' theory is that Plaintiff had a

12  duty to manufacture IKOR 2084 under the Licensing Agreement (which it breached), and that

13  Plaintiff's ability to patent and trademark a copy of IKOR 2084 shows that they could have

14  manufactured the drug.  Plaintiff argued that Defendants' proposed amended counterclaims did not

15  allege new facts but were essentially the same as paragraphs 21, 27, and 30 of the FAA and

16  paragraphs 23, 25, and 30 of the SAA.   After the hearing, the Court ordered the parties to "file a

17  joitn statement addressing when the public had notice of the trademark and patent application and/or

18  issuance for Oxapex no later than March 11, 2014." (Dkt. 112.)

19        As part of the joint statement, Defendants submitted a printout from a website regarding

20  Oxapex. (Dkt. 114-5.)  It is not a government website.  The document indicates that Oxapex was

21  registered by First Gain International, Limited, a company with an address in Hong Kong on May

22  11, 2012.  The document further indicates that the trademark application was published for

23  opposition on January 14, 2014. U.S. Patent No. 7,989,593 is also attached to the joint statement.

24  (Dkt. 114-1.)  It is titled "method for the preparation of a high temperature stable oxygen-carrier-

25  containing pharmaceutical composition and the use thereof" and lists Bing Wong (apparently

26  Plaintiff's Chief Technology Office) and Sui Yi Kwok as inventors.  The patent application was

27  filed April 11, 2011 and the patent issued August 2, 2011.  According to Defendants, the patent is

28  assigned to Billion King International Limited in Hong Kong.  The patent does not indicate that its

1   application was published prior to issuance. The text of the patent does not mention IKOR 2084,

2   OC99, or Oxapex.

3   **II.     Discussion**

4        A.      Legal Standard

5        Under Federal Rule of Civil Procedure 15(a), a court should freely grant leave to amend a

6   pleading when justice so requires.  "This policy is 'to be applied with extreme liberality.'"

7   Eminence Capital, LLC. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v.

8   Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)).  In considering whether to grant

9   leave to amend, a court considers whether the has been undue delay, bad faith or dilatory motive,

10  repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

11  opposing party, or futility of amendment.  Eminence Capital, 316 F.3d at 1051-52 (citing Foman v.

12  Davis, 371 U.S. 178, 182 (1962)).  Prejudice is the "touchstone" of the inquiry, and "[a]bsent

13  prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption

14  under Rule 15(a) in favor of granting leave to amend."  Eminence Capital, 316 F.3d at 1052.  A

15  court may deny leave to amend on the ground that amendment would be futile.  Gardner v. Martino,

16  563 F.3d 981, 990 (9th Cir. 2009); Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995).

17       B.      Proposed Counterclaims

18       Defendants seek leave to the following paragraph 17 to the breach of contract counterclaim:

19           Specifically, Logtale/NEWAI as well as New World Mobile and New World
             Development, acting through Logtale, have misused proprietary information of IKOR
20           against IKOR by trademarking the drug called Oxapex and, additionally, acquiring a
             United States patent for the drug known as Oxapex in the name of Bing Wong - Bing
21           Wong being the Chief Technology Officer of Logtale/NEWAI -- thereby breaching
             the agreement as between the parties and violating the U.S. patent rights held by
22           IKOR to the drug IKOR 2084 – the identical drug as the drug known as Oxapex.

23  (Defs.' Mot. Ex. A ¶ 17.)

24       Defendants also seek leave to add a new "cause of action" titled "Declaratory and Injunctive

25  Relief and Imposition of Constructive Trust":

26           19.      Counterclaimant IKOR hereby incorporates by reference paragraphs 1
             through and including 18 above as though hereinafter set forth verbatim.
27
             20. Pursuant to the agreement reached between the parties, Counterdefendant
28           Logtale/NEW AI was required to manufacture and sell the drug patented and created
             by IKOR known as IKOR 2084- with Logtale/NEWAI having rights to manufacture

**United States District Court**
For the Northern District of California

8

**United States District Court**
For the Northern District of California

1    and sell the drug only in the area described as the "Asian" market. Sale of the drug in
2    the United States and European marketplaces was reserved, and is reserved, for
     IKOR's use, exclusively.

3    21.    Pursuant to the contractual obligations between the parties, Counterdefendant
     owed a fiduciary duty of trust to IKOR as did the Managing Director of
4    Counterdefendant Dr. Norman Wai, aka Dr. Wai Fung-Man, who, at all times
     mentioned herein, was a Director of IKOR. Counterdefendant has utilized proprietary
5    and confidential information in creating and attempting to patent, for its own use and
     marketing and sales, a drug known as Oxapex. Counterdefendant has also
6    trademarked the name Oxapex for sale and distribution in the United States and
     European marketplaces - in violation of the contractual and patent rights held by
7    Counterclaimant for the drug known as IKOR 2084, which is the same drug as
     Oxapex, the drug created wrongfully and with technology and information given to it,
8    confidentially, by IKOR.

9    22.    An actual controversy exists between the parties relating to the legal
     rights and duties as to the respective patent and contractual rights for drugs known as
10   IKOR 2084 and Oxapex.

11   23.    Counterclaimant contends that Counterdefendant has no right to
     produce and sell the drug Oxapex anywhere in any market for any reason - as the
12   United States patent held by IKOR is a patent for the same drug known as Oxapex -
     as will be demonstrated at Trial. The conduct on the part of Counterdefendant in
13   seeking to market and sell Oxapex in the United States and European marketplaces is
     a direct violation and breach of the agreement between the parties, and Injunctive
14   Relief is necessary to prohibit the sale of the drug Oxapex.

15   24.    In addition to monetary damages, Counterclaimant seeks imposition of
     a Constructive Trust with regard to any monies received by Counterdefendant with
16   regard to the marketing and sale of the drug Oxapex in any jurisdiction whatsoever.

17   25.    Counterclaimant seeks an Order that Counterdefendant be prohibited
     from marketing and selling the drug Oxapex, as well as for an Accounting for any
18   monies received by Counterdefendant for the sale of such drug and injunctive relief
     prohibiting the counterdefendant from marketing or selling the drug Oxapex.

19

20   (Defs.' Mot. Ex. A.)  Defendants further seek to add a new prayer for relief, which, among other

21   things seeks declaratory relief, monetary, injunctive relief, and imposition of a constructive trust:

22
23   1.    For an Order and determination by the Court that the drug Oxapex is the same
     drug as IKOR 2084 and that Logtale/NEWAI could have completed the manufacture
     and sale of the drug - IKOR 2084 - as required by the agreement between by the
24   parties, but has chosen to claim, wrongfully, that it was unable to market and
     manufacture IKOR 2084 to enable Logtale/NEWAI to improperly, thereafter, seek a
25   United States patent for the same drug (but calling it "Oxapex") utilizing the
     confidential technology supplied by IKOR, pursuant to the agreement between the
26   parties; and

27   2.    To grant equitable relief in the form of an injunction, ordering
     Logtale/NEWAI to cease and desist from violations of the Licensing Agreement,
28   including infringement of IKOR Technology and infringement of IKOR's marketing
     territories and patents, and to provide the required manufacturing information, quality

9

United States District Court
For the Northern District of California

1    control information, regulatory affairs information, marketing and distribution
2    information, drug formulation from all Drug Master Files, and financial audits from
     all business units from 2006 to the present; and

3        3.      For monetary damages in an amount according to proof; and

4        4.      For imposition of a Constructive Trust with regard to monies received from
5    the sale and marketing of the Drug Oxapex; and

6        5.      For costs, disbursements and attorneys' fees incurred, in an amount according
     to proof; and

7        6.      For such other and further relief as the Court may find just, proper and
8    appropriate in the circumstance.

(Def.'s Mot. Ex. A.)

9        Plaintiff argues that the proposed amendments would be futile because: (1) Defendants have

10   not pled a valid contract; (2) Defendants have not provided evidence that Plaintiff breached the

11   licensing agreement or that Oxapex is the same as Ikor 2084; (3) the Licensing Agreement allows

12   Plaintiff to develop and manufacture drugs for sale and provides that Plaintiff will own new

13   intellectual property that it conceives and reduces to practice; (4) Defendants must arbitrate any

14   claims regarding the Licensing Agreement in Hong Kong; and (5) Defendants' proposed

15   amendments constitute an improper attempt to revive Defendants' claims for theft of intellectual

16   property and interference with prospective business opportunity that the District Court dismissed

17   with prejudice.  None of these arguments are persuasive.  The District Court previously ruled that

18   Defendants adequately pled a valid contract, and Defendants need not provide evidence supporting

19   their allegations at the pleading stage.  Additionally, the Court cannot conclude on this record that

20   the Licensing Agreement permits Plaintiff to patent and trademark a drug identical to Defendants'

21   IKOR 2084.  See, e.g., Netbula v. Distinct Corp., 212 F.R.D. 534, 539 (N.D. Ca. 2003) ("Ordinarily,

22   courts will defer consideration of challenges to the merits of a proposed amended pleading until after

23   leave to amend is granted and the amended pleading is filed.").  The potential arbitrability of the

24   counterclaims is not dispositive of futility.  Moreover, Plaintiff has not moved to compel arbitration,

25   and even if Plaintiff so moved, it would have to overcome Defendants' argument that it waived the

26   right to arbitrate.  Defendants' allegations about the patent and trademark for Oxapex are also not

27   the same as the claims that the District Court previously dismissed with prejudice.  The FAA and

28   SAA did not refer to any patents or trademarks for Oxapex or any other drug of Plaintiff's.  Rather,

**United States District Court**
For the Northern District of California

1  Defendants alleged that they knew that Plaintiff sought regulatory approval for a "knock-off" drug in

2  Europe and elsewhere.

3         On balance, however, the other factors weigh against amendment.  Most importantly,

4  Plaintiff is likely to be prejudiced by Defendants' injection of patent and trademark issues for the

5  first time in what would be Defendants' fourth set of counterclaims against Plaintiff.  Defendants'

6  proposed counterclaims would require to Plaintiff to address new theories and would likely involve

7  extensive additional discovery.  "[T]he need for a party to conduct supplemental discovery or to

8  consider a new line of legal argument are classic sources of prejudice that have regularly proven

9  sufficient to defeat a motion to amend."  IXYS Corp. v. Advanced Power Tech., Case No. 02-3942

10 MHP, 2004 U.S. Dist. LEXIS 804, at *8-*9 (N.D. Cal. Jan. 22, 2004).  Although Defendants allege

11 that the Oxapex patent and trademark are relevant to Plaintiff's breach of contract counterclaim, the

12 additional discovery regarding intellectual property, which Defendants acknowledge would involve

13 third parties,  would likely be costly and time-consuming.

14        Defendants assert that Plaintiff would not be prejudiced because discovery is still underway,

15 no depositions have been taken, and the Court set a trial date for March 9, 2015.  Although "the

16 burden of having to defend a new claim is not alone undue prejudice under Rule 15," and "the

17 prospect of additional discovery needed by the non-moving party in itself" does not constitute a

18 sufficient showing of prejudice, PNY Techs., Inc. v. Sandisk Corp., Case No. 11-4689 WHO, 2014

19 U.S. Dist. LEXIS 9858, at *15-*16 (N.D. Cal. Jan. 27, 2014) (internal citations omitted), the parties

20 are not working from a blank slate.  Rather, Defendants' proposed counterclaims are their fourth

21 attempt to assert counterclaims against Plaintiff.  In such situations, the Court has particularly broad

22 discretion to deny leave to amend.  City of L.A. v. San Pedro Boat Works, 635 F.3d 440, 454 (9th

23 Cir. 2011) ("But 'the district court's discretion to deny leave to amend is particularly broad where

24 plaintiff has previously amended the complaint.'" (quoting Ascon Props., Inc. v. Mobil Oil Co., 866

25 F.2d 1149, 1160 (9th Cir. 1989))).  Moreover, this case has already been pending over two years.

26 Further the Oxapex patent, U.S. Patent No. 7,989,593, issued and became publicly available in

27 August 2011, before Defendants filed their original counterclaims.  Similarly, the trademark for

28 Oxapex was filed and publicly available in May 2012, before Defendants filed their SAA in January

United States District Court
For the Northern District of California

1    2013.  Defendants assert that they had no reason to know of the patent or trademark prior to new

2    counsel appearing in November 2013 because the trademark was filed by a third party, the patent

3    was assigned to a third party, and the Licensing Agreement provided that they would be notified if

4    Plaintiff applied for a patent or trademark for IKOR 2084.  However, Defendants have been aware

5    since 2009 that Plaintiff was seeking regulatory approval for OC99, the drug that Defendants claim

6    is IKOR 2084, as evidenced by their allegations in their original counterclaims in the FAA and SAA.

7    New drugs often involve patents and trademarks.  Indeed, Defendants allegedly have patents

8    covering their own products.  See Athena Feminine Techs., Inc. v. Wilkes, Case No. 10-4868 SBA,

9    2013 U.S. Dist. LEXIS 16249, at *8-*10 (N.D. Cal. Feb. 6, 2013) (finding amendment after two

10   years would be prejudicial because it "undoubtedly would necessitate an enlargement of the

11   discovery cut-off date, which in turn, will delay trial" and the plaintiff's recent knowledge of new

12   claims was a result of its failure to conduct any discovery since commencement of the case).

13   Although there is no evidence of bad faith, Defendants have not shown that they could not have

14   learned of the Oxapex patent and trademark earlier through the exercise of reasonable diligence,

15   such as discovery requests to Plaintiff.

16           C.      Affirmative Defenses

17           In the SAA, Defendants raised affirmative defenses of unclean hands and waiver or estoppel.

18   (Dkt. 45 at 20.)  Defendants now request leave to add two new affirmative defenses:

20           3.      Breach of Contract. Plaintiff's claims are barred by the breach of the contract
     by plaintiff Logtale wrongfully refusing to manufacture and sell the drug IKOR 2084,
21   required by the agreement between the parties and, thereafter, attempting to
     manufacture and sell the drug Oxapex - the same drug patented and created by
22   plaintiff, known as IKOR 2084- intending to sell Oxapex worldwide, in violation of
     the contractual and patent rights as between the parties.

23           4.      Failure to Mitigate Damages/Comparative Fault. Plaintiff's claims are
     barred by the doctrine of Comparative Fault as plaintiff was careless and negligent
24   and breached the agreement as between the parties and thus is comparatively at
     fault and has proximately caused its own damages and, additionally, plaintiff's
25   claims are barred as any damages or injuries, if any there be, were aggravated by
     the failure on the part of plaintiff to use reasonable diligence to mitigate them-
26   specifically, to manufacture and sell IKOR 2084, as required by the agreement
     between the parties.

27   (Defs.' Mot. Ex. C.)  The "agreement" referred to in these proposed defenses is the Licensing

28   Agreement.  (Defs.' Mot. at 3.)  Defendants assert that these affirmative defenses are necessary "[t]o

12

1  avoid any possibility of confusion on the part of [Plaintiff] as to issues to be decided in this case at

2  Trial . . . again out of an abundance of caution, with regard to factual allegations to be proven at

3  trial." (Defs.' Mot. at 4, 8.)

4        The Court denies Defendants leave to add the new affirmative defenses.  Affirmative

5  defenses "challenge the plaintiff's legal right to bring an action" and do not allow for recovery. 13

6  <u>Moore's Federal Practice</u> § 13.90[1].  Plaintiff's breach of contract defense is really a counterclaim

7  in the guise of an affirmative defense.  Similarly, although failure to mitigate damages and

8  comparative fault can be affirmative defenses, here they are premised on Plaintiff's alleged breach of

9  the Licensing Agreement, which is not a defense to Plaintiff's claims.

10 **III.    Conclusion**

11       The Court denies Defendants' motion to amend.

16       **IT IS SO ORDERED.**

18 Dated: March 26, 2014

_____
ELIZABETH D. LAPORTE
United States Chief Magistrate Judge