United States District Court
For the Northern District of California

1
2
3
4
5                    IN THE UNITED STATES DISTRICT COURT

6                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    LOGTALE, LTD.,                        No. C -11-05452(EDL)

9              Plaintiff,                  **ORDER DENYING PLAINTIFF'S**
                                           **MOTION FOR LEAVE TO FILE A**
10   v.                                    **SECOND AMENDED COMPLAINT**

11   IKOR, INC. et al.,

12            Defendants.
                                        /
13

14          Plaintiff moves for leave to file a second amended complaint that, among other things, adds

15   seven new defendants.  For the reasons set forth below, the Court denies Plaintiff's motion.

16   **I.      Background**

17          The crux of Plaintiff's case is that Defendants IKOR, Inc., James Canton, and Ross Tye

18   induced it to invest in IKOR based on misrepresentations about IKOR's business and intellectual

19   property, and after Plaintiff invested, IKOR and its officers engaged in numerous acts that

20   undermined Plaintiff's investment and breached fiduciary duties owed to Plaintiff.  Plaintiff filed its

21   complaint against Defendants IKOR, Canton, and Tye on November 9, 2011.  Plaintiff alleged that

22   IKOR was a South Dakota corporation with its principal office in Aberdeen, South Dakota and its

23   "business offices" in San Francisco.  (Compl. ¶ 4.)  Plaintiff alleged that IKOR was in the business

24   of developing bovine-derived oxygen therapeutics and related technologies.  (Id.)   Plaintiff alleged

25   that James Canton was a California resident, chief executive officer and secretary of IKOR, and

26   chairman of the IKOR board.  (Compl. ¶ 5.)  Plaintiff alleged that Ross Tye was a California

27   resident and founder and director of IKOR.  (Compl. ¶ 6.)  Plaintiff alleged that it first learned of

28   IKOR in 2006 when it was told to consider investing in IKOR's predecessor, IKOR Life Sciences,

     Inc.  (Compl. ¶ 38.)  As part of its due diligence, Plaintiff alleged, it toured IKOR's South Dakota

**United States District Court**
For the Northern District of California

1  facility in August 2006 with Defendant Ross Tye and his son, Stephen Tye.  (Compl. ¶ 43.)

2  Plaintiff alleged that based on Defendants' representations and its own due diligence, it purchased

3  1,99,840 shares of IKOR Series A Convertible Stock under a Purchase Agreement.  (Compl. ¶¶ 17,

4  25.)  According to Plaintiff, pursuant to this agreement and an Investors' Rights Agreement it

5  became the majority shareholder of preferred IKOR stock.  (Compl. ¶ 20.)  Plaintiff alleged that

6  IKOR subsequently amended its articles of incorporation to give Plaintiff certain rights.  (Compl. ¶

7  18.)

8       Plaintiff alleged that in late 2007, it learned that IKOR's business and products were not as

9  Defendants represented them to be.  (Compl. ¶ 47.)  Plaintiff further alleged that beginning in 2009,

10  IKOR breached its corporate and contractual obligations and Canton and Tye breached their

11  fiduciary duties to Plaintiff.  Plaintiff complained that IKOR: (1) refused to provide audited financial

12  statements; (2) refused to redeem Plaintiff's IKOR shares; (3) surreptitiously issued IKOR common

13  stock; and (4) proposed a merger without consulting Plaintiff.  (Compl. ¶¶ 21-24, 31-32, 51-55.)

14  Plaintiff also alleged that IKOR engaged in transactions with BeefTech, LLC, a company operated

15  out of the same offices as IKOR in San Francisco.  (Compl. ¶ 25.)  According to Plaintiff, Canton

16  was a shareholder and chief executive officer of BeefTech, Tye was a shareholder and scientist as

17  BeefTech, and Norgrin Sanderson, an IKOR director, was a shareholder and managing director of

18  BeefTech.  (Id.)  After investigating the IKOR-BeefTech relationship using Ernst & Young and

19  outside legal counsel, Plaintiff allegedly learned in April 2010 that in 2008 and 2009, BeefTech used

20  IKOR funds to pay for BeefTech expenses and to reimburse IKOR/BeefTech directors and

21  shareholders, including Canton.  (Compl. ¶ 36.)  Plaintiff's complaint alleged claims for: (1)

22  injunction against unauthorized corporate acts against IKOR; (2) breach of contract against all

23  Defendants; and (3) breach of fiduciary duty against Canton and Tye based on, among other things,

24  their conduct involving BeefTech.

25       On February 13, 2012, Plaintiff filed a first amended complaint ("FAC") against Defendants

26  IKOR, Canton, and Tye.  The FAC is similar to the complaint except that Plaintiff added a claim for

27  breach of the implied covenant of good faith and fair dealing against IKOR and alleged that IKOR

28  engaged in improper transactions with Oxenox, LLC.  According to the FAC, IKOR sold its

1    Aberdeen, South Dakota facility to Oxenox without informing Plaintiff.  (FAC ¶ 57.)  Plaintiff

2    alleged that Tye was a shareholder and officer of Oxenox at the time of the transaction.  (FAC ¶ 58.)

3    Plaintiff also alleged that the proceeds from that transaction should have been used to redeem

4    Plaintiff's shares but instead were used to make IKOR look better to potential investors.  (FAC ¶

5    59.)  The FAC also added allegations about the Oxenox transaction to the breach of fiduciary duty

6    claim against Canton and Tye.  (FAC ¶¶ 88, 89.)

7        Plaintiff moved for leave to file a second amended complaint ("SAC") on February 27, 2014,

8    two years after filing the FAC.  Plaintiff's proposed SAC adds seven new defendants: IKOR Life

9    Sciences, Inc., BeefTech, LLC, Oxenox, LLC, A. Norgrin Sanderson, Stephen Tye, Steve Kohles,

10   and B. William Massey.  Plaintiff alleges that it has personal jurisdiction over IKOR Life Sciences,

11   BeefTech, and Oxenox because these proposed corporate defendants have business offices in

12   California, they transact business there, and they are alter egos of IKOR.  Plaintiff also alleges in the

13   proposed SAC that the Court has personal jurisdiction over the proposed individual defendants Steve

14   Kohles, Norgrin Sanderson, Stephen Tye, and William Massey because "on information and belief"

15   they transact business in California.  (SAC ¶¶ 37-40.)[1]  Although Plaintiff focuses on the proposed

16   new defendants in this motion papers, the SAC also includes numerous other new allegations that

17   tweak or are meant to bolster its claims.  For instance, Plaintiff alleges in the proposed SAC that it

18   was unable to replicate the drug IKOR 2084 according to IKOR's standard operating procedures

19   ("SOPs") and that Defendants refused to provide Plaintiff with information that it would allow it to

20   produce the drug.  (SAC ¶ 84g.)  Plaintiff also alleges for the first time that "[o]n information and

21   belief, Steve Kohles, IKOR's Chief Financial Officer, began deleting IKOR emails in or about

22   January 2010, with disclosure to and ratification by the other individual defendants, in a direct effort

23   to hide this and other improper transactions from Plaintiff in further violation of the fiduciary duties

24   of care and loyalty to IKOR and its shareholders, including Plaintiff."  (SAC ¶ 133.)   The Court

25

26        [1] Plaintiff alleges that Stephen Tye and William Massey "reside[] and transact[] business in
     California."  (SAC ¶¶ 39-40.)  These residency allegations are inconsistent with Plaintiff's allegations
27   that Stephen Tye is a South Dakota resident and William Massey is a Kentucky resident.  (SAC ¶¶ 12-
     13.)  Because Plaintiff does not argue that the Court has jurisdiction over these proposed defendants
28   because of their residency, the Court assumes that the residency allegations in paragraphs 39 and 40 of
     the SAC are typographical errors.

held a hearing on Plaintiff's motion for leave to amend on April 8, 2014.

**II.     Discussion**

    A.     <u>Legal Standard</u>

    Under Federal Rule of Civil Procedure 15(a), a court should freely give leave to amend a pleading when justice so requires.  In considering whether to grant leave to amend, a court considers whether the has been undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of amendment. <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1051-52 (9th Cir. 2003) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).  Prejudice is the "touchstone" of the inquiry, and "[a]bsent prejudice, or a strong showing of any of the remaining <u>Foman</u> factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend."  <u>Eminence Capital</u>, 316 F.3d at 1052.  A court may deny leave to amend on the ground that amendment would be futile,  <u>Gardner v. Martino</u>, 563 F.3d 981, 990 (9th Cir. 2009); <u>Bonin v. Calderon</u>, 59 F.3d 815, 845 (9th Cir. 1995), though ordinarily courts will defer consideration of the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed.  <u>Netbula v. Distinct Corp.</u>, 212 F.R.D. 534, 539 (N.D. Ca. 2003).  Of relevance here, a district court has broad discretion to deny leave to amend where a plaintiff has previously amended the complaint.  <u>City of L.A. v. San Pedro Boat Works</u>, 635 F.3d 440, 454 (9th Cir. 2011) ("But 'the district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.'" (quoting <u>Ascon Props., Inc. v. Mobil Oil Co.</u>, 866 F.2d 1149, 1160 (9th Cir. 1989))).

    B.     <u>Diligence</u>

    Plaintiff's undue delay in seeking leave to file the SAC weighs heavily in favor of denying its motion, especially given that Plaintiff has previously amended the complaint.  Although delay by itself does not justify denying a motion to amend, <u>Owens v. Kaiser Found. Health Plan, Inc.</u>, 244 F.3d 708, 712 (9th Cir. 2001), "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action."  <u>Acri v. Int'l Assoc. of Machinists & Aerospace Workers</u>, 781 F.2d 1393, 1398 (9th Cir. 1986); <u>see also</u> <u>EEOC v. Boeing Co.</u>, 843 F.2d 1213, 1222 (9th Cir. 1988) ("'Where

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

the party seeking amendment knows or should know of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend may be denied.'") (quoting Jordan v. Cnty of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982)).  Here, Plaintiff's own pleadings indicate that it was aware of IKOR Life Sciences as early as 2006 and that it learned of BeefTech in 2009 and investigated the IKOR-BeefTech transactions in 2010.  (Compl. ¶¶ 25-38.)  Plaintiff first included allegations about the IKOR-Oxenox transaction in the February 2012 FAC.  (FAC ¶¶ 56-59.)  As to the proposed individual defendants, Plaintiff alleged in its original 2011 complaint that it knew as of 2009 that Norgrin Sanderson was a BeefTech shareholder and that its representatives were given a tour of an IKOR facility by Stephen Tye in 2006.  (Compl. ¶¶ 25, 43.)  Defendant Canton states in his declaration that proposed defendants Steve Kohles, Norgrin Sanderson, and Stephen Tye met with Plaintiff as early as October 2006 and continued to interact with Plaintiff thereafter.  (Canton Decl. ¶ 3.)[2]  According to Canton, William Massey joined IKOR in July 2009 and sent several communications to Plaintiff.  (Id.)  Plaintiff knew of Steve Kohles's alleged destruction of emails as early as July 25, 2013.    Plaintiff was thus aware of the involvement of the proposed new defendants long before it moved for leave to amend in February 2014.

Plaintiff acknowledges that it knew of the proposed new defendants but asserts that it did not amend the complaint to add them earlier because: (1) it did not learn of the interrelatedness of the proposed new defendants and IKOR and their conduct until Defendants recently produced documents; (2) it did not want to move to amend until after a mediation and transfer of the case to this Court; (3) it wanted more factual certainty before seeking to add the proposed new defendants; and (4) it can add alter ego allegations at any time under California Code of Civil Procedure section 187.  These arguments do not excuse Plaintiff's multi-year delay.  Plaintiff fails to show what it learned in discovery about the proposed new defendants that it did not know or could not have known earlier.  The only evidence Plaintiff provides to justify its delay is a declaration from counsel

---

[2] Although the Canton Declaration was not timely filed, Plaintiff did not dispute his statements. The Court sustains Plaintiff's objections to those portions of the Van Patten Declaration that could not have been based on his personal knowledge or that are conclusory, namely, paragraphs 3, 4, 5 ll. 4-7, and 6 ll.12-12.

United States District Court
For the Northern District of California

1  stating vaguely that "[t]he relationship to the issues in dispute of the defendants proposed to be

2  added to the litigation was not fully ascertained by us until the defendants recently produced

3  documents during the course of discovery in this litigation."  (Knier Decl. ¶ 2.)[3]  This statement does

4  not connect Defendants' production with any specificity to the proposed new defendants and the

5  allegations of the SAC.  This argument is also undermined by Plaintiff's jurisdictional allegations,

6  which are made "on information and belief" rather than facts newly discovered.  Moreover, several

7  of the new allegations derive from the official records of the South Dakota Secretary of State.

8  Plaintiff has not explained why it could not have obtained these records long before now.

9       Plaintiff's desire to wait until after mediation and after the case was referred to this Court to

10  seek leave to amend does not justify seeking leave to amend in 2014 to add parties that it was first

11  aware of before the original complaint was filed in 2011.  Moreover, California Code of Civil

12  Procedure section 187 does not give Plaintiff carte blanche to add alter ego allegations at any time.

13  Levander v. Prober, 180 F.3d 1114, 1122 (9th Cir. 1999) ("[The] decision to grant an amendment in

14  such circumstances lies in the sound discretion of the trial court.") (quoting Carr v. Barnabey's

15  Hotel Corp., 23 Cal. App. 4th 14, 20-21 (Cal. Ct. App. 1994)).

16       C.    Prejudice

17       The prejudice factor weighs in favor of denying leave to amend as well.  Although the

18  proposed new defendants may have been aware of this litigation since its inception, this does not

19  mean that they would not be prejudiced by being joined as parties now.  DCD Programs, Ltd. v.

20  Leighton, 833 F.2d 183, 187 (9th Cir. 1987) ("Amending a complaint to add a party poses an

21  especially acute threat of prejudice to the entering party."); Becherer v. Merrill Lynch, Pierce,

22  Fenner & Smith, 43 F.3d 1054, 1069 (6th Cir. 1995) ("Simply acting as an observer and monitor

23  would not have prepared Midwest to jump into complicated litigation at this late stage in the

24  proceedings.").  Plaintiff's argument that the proposed new defendants would not be prejudiced

25  because they will be deposed in this case anyway fails to take into account that the differences

26  between party and non-party discovery.  Still, the proposed new defendants have not shown that the

27  delay in adding them as parties would "unfairly disadvantage" them or "deprive[] them of the

28

---

[3] The Court overrules Defendants' objection to the Knier Declaration.

1    opportunity to present facts or evidence which it would have offered had the amendments been

2    timely," Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989), so the prejudice factor weighs

3    slightly in favor of denial.

        D.    Futility

4

5        That amendment would likely be futile as to some of the proposed new defendants also

6    weighs against granting Plaintiff leave to file the SAC.  Defendants assert that the proposed SAC

7    does not adequately allege that the Court has personal jurisdiction over the proposed new

8    defendants.  Plaintiff counters that it properly alleged personal jurisdiction with respect to the

9    proposed corporate defendants because it alleges that each proposed defendant has or has had offices

10   or locations in California and that each entity is an alter ego of IKOR.  As to the proposed individual

11   defendants, Plaintiff argues that all of them are either current or former officers or directors,

12   investors and/or agents of defendant IKOR.

13       Because the delay and prejudice factors weigh against leave to amend, and because this is

14   not Plaintiff's first attempt to amend, the Court need not address all the personal jurisdiction

15   arguments at this stage of the proceedings.  The Court notes, however, that the proposed SAC does

16   not adequately allege personal jurisdiction over at least proposed defendants Norgrin Sanderson,

17   Stephen Tye, and William Massey.  Personal jurisdiction over a defendant is proper if it is permitted

18   by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process."

19   Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006).  Because California's long-arm

20   statute is coextensive with federal due process requirements, the jurisdictional analyses under

21   California law and federal law are the same.  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d

22   797, 801 (9th Cir. 2004).  For specific jurisdiction to exist over a non-resident defendant: "(1) The

23   non-resident defendant must purposefully direct his activities or consummate some transaction with

24   the forum or resident thereof; or perform some act by which he purposefully avails himself of the

25   privilege of conducting activities in the forum, thereby involving the benefits and protections of its

26   laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related

27   activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e.,

28

United States District Court
For the Northern District of California

it must be reasonable." Id., 374 F.3d at 802.[4]  Purposeful direction analysis is most often applied in tort cases and "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as distribution in the forum state of goods originating elsewhere." Id. at 803.  A court may find purposeful direction if the defendant committed an intentional act expressly aimed at the forum state that causes harm that the defendant knows is likely to be suffered in the forum state.  Id.

It is undisputed that Norgrin Sanderson and Stephen Tye are South Dakota residents and that William Massey is a Kentucky resident.  (SAC ¶¶ 11-13; Sanderson Decl. ¶ 3.)  Plaintiff alleges that the Court has personal jurisdiction over them because "on information and belief" they transact business in California.  (SAC ¶¶ 38-40.)  This allegation alone is insufficient to establish jurisdiction.  Plaintiff also alleges that at various times Sanderson has been treasurer, director, and shareholder of IKOR, manager-member of IKOR Life Sciences, president and managing director of BeefTech, and shareholder and office of Oxenox.  (SAC ¶¶ 11, 17, 135.)  Similarly, Plaintiff alleges that Stephen Tye has at various times been an officer, vice president of lab operations, and shareholder of IKOR, vice president of operations of IKOR Life Sciences, project director of BeefTech, and shareholder of Oxenox.  (SAC ¶¶ 12, 21, 135.)  Plaintiff alleges that William Massey was the CEO of IKOR from at least 2009 to 2010 and is currently the president and CEO of a different California corporation.  (SAC ¶ 13.)

These allegations fall short of establishing that these proposed defendants purposefully availed themselves of the privilege of conducting activities in California or purposefully directed their actions toward California.  The allegations that Stephen Tye and Sanderson were officers of IKOR and the proposed corporate defendants and that Massey was IKOR's CEO for a period of time do not, standing alone, confer a California court with jurisdiction over them.  See Calder v. Jones, 465 U.S. 783, 813 (1984) ("Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there.").  Rather, the correct inquiry is into the contacts that each individual had with California relative to this dispute.  Calder, 465 U.S. at 813 ("On the other hand, their status as employees does not somehow insulate them from jurisdiction.

---

[4] Plaintiff does not argue that it has general jurisdiction over the proposed new defendants.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Each defendant's contacts with the forum state must be assessed individually."); Davis v. Metro

2    Productions, Inc., 885 F.2d 515, 522 (9th Cir. 1989) (noting that Arizona long-arm statute could,

3    consistent with due process, "allow assertion of personal jurisdiction over officers of a corporation

4    as long as the court finds those officers to have sufficient minimum contacts with Arizona").  Here,

5    Plaintiff does not allege that Massey did anything in California other than serve as IKOR's CEO;

6    they do not connect his service with the allegations of the SAC.  Similarly, Plaintiff alleges that

7    Sanderson served as an officer of IKOR and various South Dakota corporations but does not allege

8    that he personally directed his conduct toward California.  Although Sanderson acknowledges that

9    he once attended an IKOR board meeting in California, Plaintiff does not allege that this board

10   meeting is related to the conduct complained of in the SAC.  With respect to Stephen Tye, Plaintiff

11   alleges that he showed Plaintiff around IKOR's South Dakota facility.  This conduct occurred in

12   South Dakota, not California, and was aimed at Plaintiff, a British Virgin Islands company.

13         The situation is somewhat different with respect to the other proposed defendants.  Although

14   Kohles is a South Dakota resident who has been has been president, secretary, CFO, and shareholder

15   of IKOR, and CFO of IKOR Life Sciences, Plaintiff alleges that he deleted IKOR emails on or about

16   January 2010.  (SAC ¶ 133.)  As to the proposed corporate defendants, Plaintiff alleges that they

17   have offices in California, engaged in transactions with IKOR, and are alter egos of IKOR.  In light

18   of the denial of Plaintiff's motion on other grounds, the Court need not decide at this time whether it

19   has personal jurisdiction over these proposed defendants.

20         E.    Bad Faith

21         Defendants argue that Plaintiff's failure to apprise the Court and Defendants of their intent to

22   amend when the scheduling order was being discussed is evidence of bad faith.  Defendants also

23   contend that Plaintiff should be sanctioned for this and for misrepresenting that the proposed SAC

24   only adds new parties.   There is no evidence, however, of bad faith and sanctions are not warranted.

25   Plaintiff's proposed SAC does not add new claims, but rather new allegations intended to bolster its

26   existing claims and alter ego allegations.  See, e.g., Rachford v. Air Line Pilots Ass'n, Int'l, Case

27   No. 03-3618 PJH, 2006 U.S. Dist. LEXIS 44070, at *16 (N.D. Cal. June 16, 2006) ("Nevertheless,

28   the alter ego doctrine does not create an independent cause of action that can be pled in the

alternative with another independent cause of action; it merely serves to identify which parties may be held liable for the misconduct at issue." ); Local 159 v. Nor-Cal Plumbing, Inc., 185 F.3d 978, 985 (9th Cir. 1999) ("A request to pierce the corporate veil is only a means of imposing liability for an underlying cause of action and is not a cause of action of action in and of itself." ).

**III.     Conclusion**

      The Rule 15 factors weigh against leave to amend, and the Court denies Plaintiff's motion for leave to file a second amended complaint.

      **IT IS SO ORDERED.**

Dated: April 14, 2014

ELIZABETH D. LAPORTE
United States Chief Magistrate Judge

**United States District Court**
For the Northern District of California

10