UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOGTALE, LTD., | No. C-11-5452 EDL (DMR) |
| Plaintiff, | **ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SANCTIONS [DOCKET NO. 201]** |
| v. | |
| IKOR, INC. ET AL, | |
| Defendants. | |

Plaintiff Logtale, Ltd. ("Logtale") submitted a letter brief in which it moves for sanctions against Defendants IKOR, Inc. ("IKOR"), Dr. James Canton, and Dr. Ross Tye for discovery violations. [Docket No. 201.] Defendants submitted a response to Plaintiff's motion. [Docket No. 203.] For the reasons stated below and at the September 25, 2014 hearing on the matter, the court grants Plaintiff's motion in part. At the hearing, the court ordered the parties to submit further briefing regarding the amount of reasonable attorneys' fees and costs that should be awarded to Plaintiff as a sanction against Defendants. The parties timely filed the requested briefing. [Docket Nos. 219 ("Pl.'s Mot."), 220, 224-28 ("Defs.' Opp'n"), 233, 234.] Having considered the parties' submissions, and having deemed that the matter appropriately may be decided on the papers without oral argument pursuant to Civil Local Rule 7-1(b), this order also contains the court's ruling as to the amount of sanctions that should be levied against Defendants and/or their counsel in the form of attorneys' fees and costs payable to Plaintiff.

## I. Background

This motion follows several attempts by Plaintiff to obtain full and complete responses to requests for production ("RFPs") served on Defendant IKOR on December 4, 2012. Defendants' responses to those RFPs have been the subject of numerous disputes presented to the undersigned, including at least two motions to compel and two motions for sanctions by Plaintiff. [*See* Docket Nos. 55, 62, 69, 117.]

Plaintiff filed its first motion to compel in March 2013 after IKOR provided admittedly late, incomplete responses to Plaintiff's RFPs. [Docket No. 55.] On April 22, 2013, the court granted Plaintiff's motion to compel and awarded Plaintiff $1,400 in sanctions. [Docket No. 59.] The court ordered IKOR to produce all responsive documents within fourteen days, which was May 6, 2013. However, IKOR did not produce documents by that deadline, instead producing 184 pages on May 9, 2013. Plaintiff again moved to compel in June 2013, seeking, *inter alia*, further responses to the first set of RFPs to IKOR, as well as further responses to RFPs propounded on Defendant Canton. [Docket No. 62.] On July 31, 2013, the court granted the motion to compel and again awarded Plaintiff monetary sanctions, this time ordering Defendants to pay $5,200. [Docket No. 65.] The court ordered Defendants to produce all remaining responsive documents by no later than August 26, 2013. In its order, the court noted its concerns about the adequacy of Defendants' search for responsive documents, and warned Defendants and their counsel of their obligations under the Federal Rules of Civil Procedure to properly preserve evidence and to adequately search for and produce responsive documents.

It is undisputed that Defendants made numerous productions of documents after the court-ordered August 26, 2013 deadline. Defendants produced responsive documents on August 27, 2013 and September 19, 2013. (Alameda Decl., Aug. 8, 2014, ¶¶ 3-5.) Plaintiff filed a motion for sanctions in September 2013, asserting that Defendants had not produced documents by the August 26 deadline and that they had again failed to produce *all* responsive documents. [Docket No. 69.] The court ordered Defendants to produce certain documents by November 14, 2013 and ordered Defendants to provide information regarding their searches for documents in the form of detailed,

sworn declarations by their technology expert and Defendant Canton.[1] [Docket No. 79.] Following that order, Defendants made productions of documents on November 7, 2013, December 6, 2013, and March 7, 2014. (Alameda Decl. ¶¶ 6, 7, 12.) On March 17, 2014, Plaintiff filed a motion for sanctions based on alleged evidence spoliation. [Docket No. 117.] After Plaintiff filed its motion, Defendants made two more productions of documents, on March 27 and 31, 2014. (Alameda Decl. ¶¶ 14, 17.) The court denied Plaintiff's motion for spoliation sanctions on May 22, 2014, but admonished Defendants, noting that they had produced documents upon the filing of Plaintiff's motion despite the court's order to produce all responsive documents by August 26, 2013. Despite having represented to the court that they had produced all responsive documents, (*see generally* Docket No. 137), Defendants made additional document productions on May 20, 2014, June 11, 2014 and June 13, 2014. (Alameda Decl. ¶¶ 19, 20, 24.)

Plaintiff now requests terminating sanctions in the form of striking Defendants' counterclaim for breach of contract in its entirety, or, in the alternative, monetary sanctions on the grounds that Defendants have repeatedly violated this court's orders to produce all responsive documents to Plaintiff, as well as an order compelling Defendants to fully and finally respond to discovery by a date certain.

## II. Legal Standards

Federal Rule of Civil Procedure 37 authorizes the imposition of various sanctions for discovery violations, including a party's failure to obey a court order to provide or permit discovery and failure to timely supplement initial disclosures and/or discovery responses pursuant to Rule 26(e). Fed. R. Civ. P. 37(b)(2)(A), (c)(1). Such sanctions may include ordering a party to pay the reasonable expenses, including attorneys' fees, caused by its failure to comply with the order or rule. Fed. R. Civ. P. 37(b)(2)(C), (c)(1)(A). A court may also strike pleadings or dismiss an action in whole or in part. Fed. R. Civ. P. 37(b)(2)(A)(iii), (v). Dismissal is a "harsh sanction," and the court must consider the following factors to determine whether it is appropriate: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of

---

[1] The court denied Plaintiff's request for sanctions in the form of attorneys' fees and an order striking Defendants' counterclaim and third-party complaint.

3

prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (citing *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)).  The court need not make explicit findings on all of these factors, but a finding of "'willfulness, fault, or bad faith' is required for dismissal to be proper." *Id*.

### III. Discussion

**A.     Applicability of Sanctions**

Plaintiff argues that terminating or monetary sanctions are appropriate for Defendants' repeated late productions of documents in violation of this court's orders.  In its motion, Plaintiff complains of other actions by Defendants that it claims constitute discovery violations.  Specifically, Plaintiff asserts that Defendants have repeatedly produced documents in PDF format, instead of native format, and have occasionally produced documents in non-unitized PDF format, which is not searchable. (Alameda Decl. ¶¶ 2, 3, 5, 8, 9, 14, 17, 19, 21, 24.)  In addition, nearly all of the documents Defendants have produced contain no accessible metadata.  (Alameda Decl. ¶¶ 2, 3, 5, 8, 9, 12, 14, 17, 19, 21, 24.)  Plaintiff also contends that Defendants produced emails without attachments connected to the parent emails, as well as documents that were not bates-stamped, making it extremely difficult, if not impossible, to verify whether the attachments had been produced separately and to verify which attachments correspond to the emails.  (Alameda Decl. ¶¶ 6, 11, 13, 16,18, 22, 23, 25, 26.)  Finally, Plaintiff asserts that some documents contained redactions or were clearly missing pages.  (Alameda Decl. ¶¶ 4, 15, 20.)  However, it appears that Defendants did not produce a privilege log until July 24, 2014, (Alameda Decl. ¶ 29), despite having been ordered to do so by November 4, 2013.  [*See* Docket No. 79.]

In response, Defendants do not dispute that they made productions of responsive documents in November 2013, December 2013, and March 2014.  Instead, they describe the difficulties they encountered in accessing and producing email communications from Defendants Canton and Tye, reiterating arguments they made in opposition to Plaintiff's motion for spoliation sanctions.  Defendants attempt to describe the "core" of the parties' present dispute as a dispute over metadata.  Defendants contend that Plaintiff has confused metadata with "native format," and that Plaintiff's

initial RFPs did not include a request for documents in native format. According to Defendants, they have produced documents in hard copy and electronic (PDF) format, and are not obligated to produce the same documents in a different form. Defendants claim they produced metadata for Defendant Canton's emails on June 11, 2014, and additional metadata, as well as an index cross-referencing email attachments, on June 13, 2014.

Defendants' opposition misses the point. Defendants have repeatedly failed to observe court-ordered deadlines to produce all responsive documents, and this court has repeatedly admonished counsel for their failure to do so. While describing essentially technical difficulties encountered with collecting and producing documents, it is undisputed that Defendants made a number of document productions after the August 26, 2013 deadline. By the court's count, Defendants produced documents at least *ten times* after August 26, 2013. Defendants never sought relief from the court from this deadline, forcing Plaintiff to file repeated motions before the undersigned to obtain responsive documents. Accordingly, sanctions are appropriate pursuant to Rule 37(b) for Defendants' failure to "obey an order to provide or permit discovery" based on their repeated late productions of documents. *See* Fed. R. Civ. P. 37(b)(2)(A).

However, the court denies Plaintiff's motion to the extent that it seeks sanctions for Defendants' failure to produce documents in native format and to produce accessible metadata for their productions. There is no evidence in its moving papers that Plaintiff ever made a formal request to Defendants to produce documents in native format with metadata, nor any indication that this was the subject of the parties' meet and confer efforts. This issue has never been the subject of any previous discovery motions before this court, and most importantly, Plaintiff has identified no court order or discovery rule that Defendants have violated by failing to produce documents in Plaintiff's preferred format. Accordingly, sanctions pursuant to Rule 37(b)(2)(A) are not warranted on this basis.

**B.     Appropriate Sanctions**

Plaintiff requests terminating sanctions in the form of striking Defendants' counterclaim for breach of contract in its entirety, or, in the alternative, significant monetary sanctions.

The Ninth Circuit has instructed that "[d]ismissal is an available sanction when 'a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings' because 'courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.'" *Leon*, 464 F.3d 951 at 958 (citation omitted). Before imposing the sanction of dismissal pursuant to either Rule 37 or the court's inherent power, courts must consider the following five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id*. In addition, a finding of "willfulness, fault, or bad faith" is required for dismissal to be proper, and the Ninth Circuit has reiterated the need to consider "less severe alternatives" than outright dismissal. *See id*. Further, in assessing whether dismissal is appropriate, the court must "explicitly discuss the feasibility of less drastic sanctions and explain[] why such alternate sanctions would be inappropriate," "implement[] alternative sanctions before ordering dismissal," and "warn[] the party of the possibility of dismissal before ordering dismissal." *Id*. at 960. Lesser sanctions may not be adequate in circumstances "where the court anticipates continued deceptive misconduct," and there is no "reasonable assurance that the truth would be available." *Anheuser-Busch*, 69 F.3d at 348.

Plaintiff does not address the five *Leon* factors in its motion, nor does it offer any argument or evidence regarding Defendants' "willfulness, fault, or bad faith." Instead, it cites two cases in support of its position that terminating sanctions are appropriate. However, both cases are distinguishable. In the first, *U.S. v. Sumitomo Marine & Fire Insurance Co.*, 617 F.2d 1365, 1367 (9th Cir. 1980), the government sued the owner of a private vessel for damages resulting from a collision at sea. The government repeatedly failed to comply with numerous court orders to provide discovery into its damages over an eighteen-month period, and with only two weeks left before trial, had still only provided an estimate of damages, with no supporting evidence. *Id*. at 1368. The court imposed sanctions in the form of preclusion of evidence of the government's damages, tantamount to dismissal, and the Ninth Circuit affirmed, finding no abuse of discretion. *Id*. at 1370-71. Here,

trial is not set until May 2015, and unlike the defendant in *Sumitomo*, Plaintiff has made no showing that a key subset of documents or information is missing from Defendants' production.

Plaintiff also cites *Computer Task Group v. Brotby*, 364 F.3d 1112, 1114 (9th Cir. 2004), in which the Ninth Circuit affirmed the district court's imposition of sanctions in the form of dismissing counterclaims, striking the party's answer, and entering default. In that case, the sanctioned party, the plaintiff, "gave contradictory answers, made frivolous objections and filed baseless motions," never disclosing the information sought by the defendant. *Id*. In addition, he "made excuses and changed his story repeatedly, making it impossible for [the defendant] to establish basic facts with any certainty." *Id*. The defendant filed eight motions to compel, all of which were granted, and the court issued terminating sanctions following a three-day evidentiary hearing on the issue, finding the plaintiff had "engaged in a consistent, intentional, and prejudicial practice of obstructing discovery." *Id*.

Here, despite Defendants' dilatory conduct and failure to comply with court orders, their misconduct has not so infected this case to make a fair trial impossible or so impacted Plaintiff as to render it incapable of responding to Defendants' evidence. Again, Plaintiff has not identified a category or categories of information that are missing from Defendants' production that has caused prejudice. Accordingly, Plaintiff has failed to establish that terminating sanctions are appropriate. *See, e.g., Anheuser-Busch*, 69 F.3d at 352 (affirming dismissal sanction because party's active concealment of documents for three years and repeated violations of court orders demonstrated such "an abiding contempt and continuing disregard for this court's order that dismissal was the only real alternative"; court held a four-day evidentiary hearing before dismissing counterclaim). The court finds that the payment of Plaintiff's reasonable expenses, including attorneys' fees, caused by Defendants' failure to comply with the July 31, 2013 order is appropriate.

## C.     Reasonable Attorneys' Fees

At the hearing on this motion, the court ordered the parties to submit briefing as to the amount of reasonable attorneys' fees and costs that should be awarded to Plaintiff as a sanction against Defendants. Plaintiff argues that it should be compensated $155,012.40 in attorneys' fees for work it claims counsel was forced to perform as a result of Defendants' violation of this court's

order, including meet and confer efforts, filing motions to compel, processing Defendants' incomplete productions, and going through each of the productions to note missing pages and documents. Defendants object to Plaintiff's request on the grounds that the amount sought is excessive and that Plaintiff has failed to specifically tie its claimed hours to work it claims it incurred due to Defendants' conduct. Defendants suggest that the court award Plaintiff sanctions "in the same range of those previously imposed–$1,400 and $5,200, respectively." (Defs.' Opp'n 1.)

In the Ninth Circuit, reasonable attorneys' fees are determined by first calculating the "lodestar." *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). There is a strong presumption that the lodestar figure represents a reasonable fee. *Jordan*, 815 F.2d at 1262. In calculating the lodestar, the court must determine both a reasonable number of hours and a reasonable hourly rate for each attorney. *Morales*, 96 F.3d at 363. In calculating a reasonable number of hours, the applicant must justify the claim by submitting detailed time records. The court may adjust these hours down if it believes the documentation to be inadequate, if the hours were duplicative, or if the hours were either excessive or unnecessary. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987).

Plaintiff asserts that it "incurred $155,012.40 in attorneys' fees and costs relating to work performed as a result of the defendants' failure to timely and fully respond to discovery requests in violation of the Court's order." (Morneau Decl. ¶ 16.) Its request for fees is divided into nine separate groupings of entries related to a specific task and/or time period. (*See* Morneau Decl., Oct. 3, 2014, ¶¶ 17-25.) The court has carefully reviewed Plaintiff's entries and concludes that it is inappropriate to award attorneys' fees for certain entries and groups of entries. First, Plaintiff seeks a significant amount of attorneys' fees for work related to its September 5, 2013 motion to compel and request for sanctions (Docket No. 69). The total sum Plaintiff seeks related to that motion, including briefing the motion to compel, meeting and conferring, analyzing Defendants' production for deficiencies, and preparing for and attending the October 31, 2013 hearing on the motion, is

$20,737.80. (Morneau Decl., Oct. 3, 2014, ¶ 17.) The court declines to award fees related to the September motion to compel. In ruling on that motion, the court ordered Defendants to produce certain categories of documents; however, the court denied Plaintiff's request for monetary sanctions, specifically noting that "Plaintiff ha[d] not established that [Defendants'] production [was] materially incomplete." (Oct. 31, 2013 Order at 2.) Accordingly, as the court has already determined that sanctions were not warranted in connection with the September 2013 motion to compel, it declines to award fees for such work.[2] The court also declines to award the $6,543.90 in fees incurred for reviewing Defendants' production prior to the October 31, 2013 hearing on the September 2013 motion to compel. (Morneau Decl. ¶ 18.) Reviewing documents produced in discovery is part of the normal course of litigation, and Plaintiff has not shown that it would not have reviewed those documents but for Defendants' discovery misconduct.

Plaintiff also seeks a total of $59,169.60 in attorneys' fees related to its June 2014 motion to continue the trial and related dates, which was heard by the Honorable Elizabeth D. Laporte on July 29, 2014. (Morneau Decl. ¶ 24; *see* Docket No. 172 (Pl.'s Mot. to Continue).) Plaintiff argues that it was "forced to move for a continuance" of the case deadlines in light of Defendants' failure to provide discovery responses, (Pl.'s Mot. 8), but does not clearly set forth the connection between the motion to continue and Defendants' misconduct related to its failure to comply with this court's discovery orders. Upon the court's own review of Plaintiff's motion to continue, it appears that Plaintiff based its motion in part on Defendants' failure to produce metadata, an issue on which this court declines to award sanctions. (*See* Pl.'s Mot. to Continue at 7-8.) As Plaintiff made no attempt

---

[2] In support of its argument that the court should award fees related to the September 2013 motion to compel, Plaintiff argues that in ruling on a request for fees, the court may consider all of Defendants' discovery misconduct, "including conduct which has been the subject of earlier sanctions." (Pl.'s Reply 10.) However, the case Plaintiff cites in support, *Payne v. Exxon Corp.*, 121 F.3d 503 (9th Cir. 1997), does not stand for such a proposition. Instead, the Ninth Circuit held that a court "may properly consider all of a party's discovery misconduct *in weighing a motion to dismiss*, including conduct which has been the subject of earlier sanctions." *Id*. at 508 (emphasis added). As discussed above, the court finds that Plaintiff has failed to establish that terminating sanctions are warranted here and denies Plaintiff's request to strike Defendants' counterclaim.

Additionally, Plaintiff does not explain the discrepancy between the amount of attorneys' fees it originally sought in its September 2013 motion to compel–$3,250–and the amount it now claims it incurred in preparing the motion to compel–$8,965.80. (*Compare* Docket No. 69 at 4-5 *with* Morneau Decl. ¶ 17(D).)

to apportion the time spent on its motion to continue between compensable and non-compensable time, the court declines to award fees related to the motion.

Finally, Plaintiff seeks a total of $24,317.10 in attorneys' fees related to the present motion. (Morneau Decl. ¶ 25.) This total includes at least 18.5 hours spent researching and drafting the July 3, 2014 letter brief (Docket No. 179). However, the court declines to award fees for drafting that brief. On August 1, 2014, after Defendant filed a response, the court issued an order stating that "it appear[ed], but [was] not clear, that Plaintiff [sought] sanctions for Defendants' alleged violations of court orders regarding discovery." [Docket No. 198.] The court ordered Plaintiff to re-submit a letter brief "setting forth exactly which court order(s) it contend[ed] Defendants violated and how and when Defendants violated those orders," including submitting admissible evidence, and set a briefing schedule. Plaintiff's subsequent August 8, 2014 letter brief (Docket No. 201) complied with the court's order and forms the basis for the present order on sanctions. Yet Plaintiff apparently does not seek fees in connection with the research and drafting of its August 8 brief as there are no time entries in its submissions which pertain to those tasks. As the July 3, 2014 letter brief was not granted, the court will not award fees for the 18.5 hours spent researching and drafting that brief. The court awards fees for time incurred in connection with preparation for the September 25, 2014 hearing, as well as time incurred meeting and conferring with Defendants during that time period. However, as to the time incurred to prepare for the hearing, Plaintiff claims a total of 14.1 hours, which is excessive. Therefore, the court will award compensation for one third of the hours claimed, or 4.7 hours.

As to the remaining groups of entries, (*see* Morneau Decl. ¶¶ 19-23, 25), the court finds that Plaintiff has adequately shown that it incurred the time claimed as a result of Defendants' misconduct. These groups include extensive entries related to meeting and conferring with Defendants regarding their late and incomplete productions and reviewing the existing productions in order to determine gaps in the productions.

Plaintiff seeks hourly rates ranging from $240 per hour for a litigation support analyst and $340 per hour for senior paralegals with over twenty years of experience to $770 per hour for partners Mark C. Goodman (lead counsel) and Ethan Miller, who each have 23 years of experience

//

//

practicing law.  (Morneau Decl. ¶ 26.)  It seeks hourly rates ranging from $550 per hour for associates with three to six years of experience and $575 per hour for two associates with eleven and 23 years of experience.  (Morneau Decl. ¶ 26.)  Plaintiff receives a 10% discount on each bill generated that is reflected in its billing records.  (Morneau Decl. ¶ 26(K).)  Plaintiff argues that the requested fees are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."[3]  (Pl.'s Mot. 13 (citing *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (citation omitted)).  In support, it cites *Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. C 11-1846 LHK (PSG), 2012 WL 5451411, at *6-7 (N.D. Cal. Nov. 7, 2012), in which the court analyzed the American Intellectual Property Law Association's ("AIPLA") annual survey of hourly rates, which provided average rates for intellectual property lawyers.  The court ultimately awarded AIPLA's 75% quartile rates for partners and the highest paid associate, which were $700 and $470, respectively.  *Id*. at *7.  Plaintiff argues that its effective billing rates, which reflect a 10% discount, are thus in line with the hourly rates awarded "in similar cases."  (Pl.'s Mot. 14.)

Plaintiff's argument is problematic for a few reasons.  First, it only compares its requested rates to those awarded in *Apple*, which was a patent case, and thus is inapposite.  Second, Plaintiff does not submit a declaration or other evidence to support the requested hourly rates.  *See Camacho*, 523 F.3d at 980 ("[t]o inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence–in addition to the attorney's own affidavits–that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation" (citation and quotation marks omitted)).  Further, Plaintiff's approach is to set forth one claimed rate per group of lawyers: partners, senior attorneys, and associates.  However, the lawyers within the groups of senior attorneys and associates each have varying levels of experience.  For example, based on the court's own experience and

---

[3] Defendants do not challenge the hourly rates sought by Plaintiff.

11

//
//

knowledge, a $575 hourly rate for Elizabeth Knier, who was admitted to practice in California in 1991, is within the range of reasonable hourly rates for attorneys of comparable skill, experience and reputation litigating similar cases in the San Francisco Bay Area. Yet Plaintiff also asks for the same rate for Hailey Hibler, who has only been practicing since 2003. (Morneau Decl. ¶ 26(C), (D).) This problem is further illustrated by examining the group of associates. Plaintiff asks for an hourly rate of $550 for each of its three associates. The most experienced associate has six years of experience. (Morneau Decl. ¶ 26(E).) In comparison, the least experienced associate, for whom Plaintiff also requests a $550 hourly rate, has three years of experience and was only admitted to practice law in California in 2014.

The court can consider its own experience and knowledge of comparable rates in this region to determine reasonable rates for each individual attorney. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (district courts may rely on their own familiarity with local legal market to determine prevailing rate). However, the time records Plaintiff submitted do not identify tasks by individual timekeeper; instead, they only identify the timekeeper by position, i.e. "partner," "senior associate," and "associate." (*See generally* Morneau Decl. ¶¶ 17-26.) Accordingly, the court will set one reasonable rate for each group of attorneys and apply those rates across the board.

In April 2013, the court awarded partner Mark Goodman, lead counsel in this case, $700 per hour. [Docket No. 59.] Consistent with that order, the court awards the partner group of attorneys a $700 hourly rate. As for senior associates, in July 2013, Elizabeth Knier asserted that her hourly rate was $450 per hour.[4] Plaintiff has not offered evidence to support an increase from $450 to $575 in one year, and accordingly will award the senior associate group of attorneys $450 per hour. The court will award the associate group of attorneys $350 per hour, consistent with its July 2013 order. *See, e.g., Xu v. Yamanaka*, No. 13-CV-3240 YGR, 2014 WL 3840105, at *2, 4 (N.D. Cal. Aug. 1, 2014) (awarding rates ranging from $300 per hour for associate with one year of experience to $850

---

[4] The court awarded Plaintiff sanctions based upon a $350 hourly rate on the ground that the dispute was straightforward and could have been handled by a junior associate. [Docket No. 65.]

per hour for partner with over 23 years of experience); *Pham v. Watts*, No. 14-cv-02247-VC, 2014 WL 4748274, at *1 (N.D. Cal. Sept. 23, 2014) (awarding $400 per hour to attorney with six years of experience); *Jimenez v. Suntrust Mortg. Inc.*, No. 5:13-CV-04615-EJD, 2014 WL 3945836, at *3 (N.D. Cal. Aug. 11, 2014) (awarding $250 per hour to attorney with five years of experience).  The court awards $200 per hour for Plaintiff's senior paralegals and $150 per hour for the litigation support analyst.[5]  *See, e.g., Dixon v. City of Oakland*, No. C-12-05207 DMR, 2014 WL 6951260, at *10 (N.D. Cal. Dec. 8, 2014) (awarding $200 per hour for senior paralegals); *Lewis v. Activision Blizzard, Inc.*, No C 12-1096 CW, 2014 WL 4953770, at *3 n.2 (N.D. Cal. Sept. 25, 2014) (finding reasonable $190 and $210 hourly rates for paralegals); *Californians for Disability Rights v. Cal. Dep't of Transp.*, No. C 06-05125 SBA (MEJ), 2010 WL 8746910, at *13 (N.D. Cal. Dec. 13, 2010) (awarding $245 hourly rate for "legal technology manager" and $65 hourly rate for "legal technology analyst").

The following table reflects the lodestar adjustments, as discussed above.

| Attorney | Rate | Hours | Total Fees |
|---|---|---|---|
| Partners | $700 | 20 | $14,000 |
| Senior Associates | $450 | 24.5 | $11,025 |
| Associates | $350 | 22.6 | $7,910 |
| Senior Paralegals | $200 | 36.7 | $7,340 |
| Litigation Support Analyst | $150 | 25.8 | $3,870 |
| | | | **Total: $44,145** |

Therefore, the court awards sanctions in the total amount of $44,145.  The sanctions shall be paid by Defendants and/or their counsel to Plaintiff within forty-five (45) days of the date of this Order.

## IV.  CONCLUSION

---

[5] The court notes that Plaintiff did not provide any information about the years of experience of its litigation support analyst, nor provide any evidence supporting its requested hourly rate of $240. Based upon its review of the tasks performed by the litigation support analyst, the court finds that $150 is an appropriate hourly rate.

For the foregoing reasons, the court grants in part Plaintiff's motion for sanctions and awards Plaintiff fees in the amount of $44,145.

IT IS SO ORDERED.

Dated: February 11, 2015



Donna M. Ryu
United States Magistrate Judge

14